# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 03-4012

DENNIS WALKER,

*Plaintiff-Appellant,*

v.

MUELLER INDUSTRIES, INC.,
MUELLER STREAMLINE CO., and
DEBORAH JONES,

*Defendants-Appellees.*

———————

Appeal from the United States District Court for
the Northern District of Illinois, Eastern Division.
No. 01 C 6155—**David H. Coar**, *Judge.*

———————

ARGUED JANUARY 7, 2005—DECIDED MAY 11, 2005

———————

Before POSNER, RIPPLE, and ROVNER, *Circuit Judges.*

ROVNER, *Circuit Judge.* Dennis Walker sued his employer,
Mueller Streamline Company, a subsidiary of Mueller
Industries, Inc. (collectively, "Mueller") and his supervisor,
Deborah Jones, pursuant to Title VII of the Civil Rights Act
of 1964, 42 U.S.C. § 2000e-2(a)(1) ("Title VII"), and
42 U.S.C. § 1981. Walker alleged that he was forced to work
in a racially hostile work environment and that Jones and
Mueller retaliated against him for complaining about inci-

dents of discrimination against his co-workers. The district court granted summary judgment in favor of the defendants. *Walker v. Mueller Indus., Inc.*, No. 02 C 6615, 2003 WL 22410081 (N.D. Ill. Oct. 21, 2003). We affirm.

**I.**

Walker has been employed as a warehouse worker at Mueller Streamline Company's distribution center in Addison, Illinois since 1993. The workforce at the Addison facility is unionized, and beginning in or about May 2000, Walker served as the union steward. In that role, and beginning in April 2001, Walker complained to the warehouse manager, Deborah Jones, that African-American employees were subject to racial discrimination at the warehouse. The complained-of conduct took various forms, including but not limited to the following instances of workplace harassment: co-workers singing racially derogatory songs, references to African Americans as "monkeys," and graffiti including "N-I-G-A" written throughout the warehouse. According to Walker, after he began to alert management to the discrimination his co-workers were experiencing, the company began to retaliate against him for the complaints, excluding him from more desirable work assignments and a supervisory position and subjecting him to workplace harassment.

In May 2001, Walker filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") asserting that Mueller had discriminated against him on the basis of his race (Walker is white) by failing to provide a workplace free of racial discrimination and also by retaliating against him for raising complaints of racial discrimination on behalf of his co-workers. In April 2002, following an investigation into Walker's charge, the EEOC determined that there was "reasonable cause to believe that [Mueller] maintains a hostile work environment on the basis of race, Black, in violation of Title VII." The EEOC subsequently

issued Walker a notice of his right to sue, and Walker timely filed suit against Mueller and Jones in the district court, again asserting that he was the victim of both race discrimination and retaliation.

The district court ultimately granted summary judgment in favor of the defendants. As to Walker's claim of race discrimination, the court pointed out that Walker had abandoned any claim that Mueller had discriminated against him based on his own race. *Walker v. Mueller Indus., Inc.*, *supra*, 2003 WL 22410081, at *3. Instead, Walker was asserting a derivative claim of discrimination based on the hostile environment allegedly perpetrated against African-American workers at the Addison facility. That claim, the court concluded, was foreclosed by this court's opinion in *Bermudez v. TRC Holdings, Inc.*, 138 F.3d 1176, 1180-81 (7th Cir. 1998). *Walker*, 2003 WL 22410081, at *3. As for the retaliation claim, the court determined that none of the purportedly retaliatory conduct cited by Walker amounted to an adverse employment action, as the cases generally require in order to establish actionable retaliation. *Id.*, at *4-*5.

## II.

Our review of the district court's summary judgment decision is de novo. *E.g.*, *Mannie v. Potter*, 394 F.3d 977, 982 (7th Cir. 2005). As we noted at the outset, Walker sued the defendants under both Title VII and section 1981. We employ similar standards in evaluating his claims under these two statutes. *E.g.*, *Alexander v. Wisconsin Dep't of Health & Family Servs.*, 263 F.3d 673, 681-82 (7th Cir. 2001). We note, however, that only Mueller (not Jones) can be held liable under Title VII. *E.g.*, *EEOC v. AIC Security Investigations, Ltd.*, 55 F.3d 1276, 1281-82 (7th Cir. 1995).

A.  Racial Discrimination

As we begin our review, we reiterate that Walker is not complaining that Mueller subjected him to any racial discrimination stemming from his own race. Although Walker suggested that he was asserting such a claim in his EEOC charge, there was no mention of any such claim in the memorandum that he filed in opposition to the defendants' summary judgment motion below. Indeed, as the district court pointed out, Walker during his deposition testimony expressly disavowed any intent to assert such a claim. *Walker*, 2003 WL 22410081, at *3 (citing Walker Dep. at 127-28). Walker has therefore forfeited, if not waived, any claim based on his own race. *See United States v. Olano*, 507 U.S. 725, 733, 113 S. Ct. 1770, 1777 (1993) ("Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the 'intentional relinquishment of a known right.'") (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S. Ct. 1019, 1023 (1938)).

Rather, in the district court, as in his EEOC charge, Walker contended that he was subjected to a hostile environment due to the racially-animated harassment that was directed at his African-American co-workers. But Walker himself is white, and as the district court recognized, this court's opinion in *Bermudez*, 138 F.3d at 1180-81, all but closes the door on the notion that an employee who observes workplace hostility but is not a member of the class of persons at whom the harassment was directed may bring a derivative claim for the harassment. We say "all but" because, after noting an even split among the judges of the Fourth Circuit on this question in *Childress v. City of Richmond, Va.*, 134 F.3d 1205 (4th Cir. 1998) (en banc), we concluded our discussion in *Bermudez* with the qualification that "[w]e need not come to rest on the subject today . . . ." 138 F.3d at 1181. Instead, we proceeded to reject the hostile environment claim for lack of proof that the harassment "poisoned the working atmosphere" for the plaintiff. *Id.*

We dispose of Walker's claim on the same basis. We may assume that the conduct of which Walker complains was severe and/or pervasive enough to render the distribution center hostile for Mueller's African-American employees. *See, e.g., Smith v. Northeastern Ill. Univ.*, 388 F.3d 559, 566 (7th Cir. 2004) (discussing the severe and/or pervasive requirement). As a bystander, Walker was disturbed by the harassment, as any enlightened employee would have been. But Walker has made no attempt to establish that the conduct was so offensive to him as a third party as to render the workplace hostile not only for him but for any reasonable employee who likewise was a bystander rather than a target of the harassment. *See Bermudez*, 138 F.3d at 1181; *see also Smith*, 388 F.3d at 567. The record thus lends insufficient support to Walker's derivative harassment claim. Walker reminds us that the EEOC in its reasonable cause determination found Walker to be among the class of employees aggrieved by the hostile environment created by the racist conduct at the warehouse (*see* R. 1-1 Ex. B at 1), and he suggests that we should defer to that determination. But Walker never made that argument in opposing the defendants' summary judgment below and has therefore forfeited the argument. *See, e.g., Ocean Atlantic Dev. Corp. v. Aurora Christian Schools, Inc.*, 322 F.3d 983, 1005 (7th Cir. 2003) (arguments not raised in the district court are forfeited); *see also Tuohey v. Chicago Park Dist.*, 148 F.3d 735, 739 (7th Cir. 1998) ("an EEOC 'reasonable cause' finding . . . would not have been dispositive of the subsequent litigation"); *EEOC v. Harvey L. Walner & Assocs.*, 91 F.3d 963, 968 n.3 (7th Cir. 1996) ("Th[e] determination of reasonable cause is only an administrative prerequisite to a court action and has no legally binding significance in subsequent litigation.").

In his appellate briefs, Walker also floats the possibility that he suffered discrimination because of his association with Mueller's African-American employees. But this is

another argument that he failed to make in the district court: there was no mention of this theory in his summary judgment memorandum below. He has therefore forfeited this theory of discrimination. *E.g.*, *Ocean Atlantic Dev. Corp.*, 322 F.3d at 1005.

Walker did assert below that Mueller and Jones took punitive measures against him because he pursued claims of discrimination on behalf of his African-American colleagues. But this is properly understood as a claim of retaliation rather than direct racial discrimination. We address Walker's retaliation claim next.

## B. Retaliation

Walker asserts that Mueller, through Jones, retaliated against him in a variety of ways after he began to speak out against the racially discriminatory environment at the warehouse. He asserts that he was assigned exclusively to handle the job of "order-picking" at the warehouse, which he characterizes as the most physically demanding and undesirable assignment for warehouse workers. He also claims that he was rejected for the position of lead person, in which he would have acted in Jones' stead when she was absent from the warehouse. And he contends he was disciplined on trumped-up charges that his work performance and attendance were poor and that he violated company policy by bringing a personal notebook into the warehouse. The district court determined that none of these actions amounted to the kind of adverse employment action that our cases say is needed to establish actionable retaliation. *See*, *e.g.*, *Hasan v. U.S. Dep't of Labor*, 400 F.3d 1001, 1004 (7th Cir. 2005).

The district court noted that the order-picking assignment to which Walker objected was one of a number of genuine tasks that any warehouse worker could be directed to perform; assigning Walker to that task therefore could not

be described as a demotion or other type of adverse employment action. *Walker*, 2003 WL 22410081, at \*4. Even if we assume that a punitive assignment to the least desirable of legitimate tasks could support a retaliation claim, the timing of Walker's assignment is inconsistent with the notion that it was retaliatory. As the defendants pointed out below, Jones reassigned Walker from auditing to order-picking soon after she arrived at the warehouse in 1999, long before he began to complain of race discrimination. *See* R. 29 at 4; R. 24 ¶ 33. At the time of the reassignment, Walker and Jones still were on good terms, by Walker's own account. *See* R. 23 at 3 (citing Walker Dep. 192-93). Moreover, the record reveals that Walker had been performing the order-picking task for eight of the ten years he had worked at Mueller. R. 24 ¶ 25. The record thus does not support the inference that Jones reassigned Walker for an illegitimate purpose.

With respect to the warnings, even if we assume that Jones issued them for reasons unrelated to Walker's actual performance, Walker has not shown that they were anything more than warnings. As the district court recognized, warnings in and of themselves normally do not suffice as proof of retaliation. *See, e.g.*, *Kersting v. Wal-Mart Stores, Inc.*, 250 F.3d 1109, 1118-19 (7th Cir. 2001). Walker produced no evidence that the warnings had any concrete effect on his position, pay and benefits, or his prospects at Mueller. *Cf. Ezell v. Potter*, 400 F.3d 1041, 1049 (7th Cir. 2005) (whereas letter of warning did not constitute adverse employment action, letter indicating intent to terminate plaintiff did constitute such an action, notwithstanding its later withdrawal).

As for the lead person position, the district court reasoned that Jones' decision not to put Walker in that position did not amount to an adverse employment action because the position was not a supervisory position, as Walker had alleged, and earned its holder no greater pay so as to dis-

tinguish it from the post of warehouse employee that Walker held. 2003 WL 22410081, at *5; *see, e.g., O'Neal v. City of Chicago*, 392 F.3d 909, 913 (7th Cir. 2004) (lateral transfer to essentially equivalent position normally does not suffice as adverse employment action). Walker insists that the record reveals factual disputes as to the nature of the lead person position and its compensation, but even if we give him the benefit of the doubt on these points, the defendants are still entitled to summary judgment. Walker has not attempted to establish retaliation directly, with proof of a causal link between his protected activity and the defendants' purportedly punitive conduct that does not depend on inferences deriving from circumstantial evidence. *See Stone v. City of Indianapolis Pub. Util. Div.*, 281 F.3d 640, 644 (7th Cir. 2002). He is instead relying on the indirect method. *See id.* Within the burden-shifting framework governing that method of proof, Walker ultimately must offer evidence that any legitimate explanation the defendants identify for Jones' decision is pretextual. *Id.* Jones articulated a number of legitimate reasons for her decision to select someone other than Walker as the lead person, and a review of the record reveals that Walker has failed to rebut at least one of them. *See, e.g., Hudson v. Chicago Transit Auth.*, 375 F.3d 552, 561 (7th Cir. 2004) (where employer articulates more than one noninvidious reason for challenged action, plaintiff must offer evidence that each reason is pretextual). Jones said that the lead person needed to be someone who had the trust and respect of his co-workers, a requirement that strikes us as plausible given that the lead person acted in Jones' stead when she was absent from the warehouse. Jones thought that Walker did not meet that requirement, and she identified several individuals that she believed did not trust and respect Walker. R. 24 ¶ 68; R. 30 ¶ 121. Walker has produced no evidence suggesting that Jones did not genuinely rely on this noninvidious rationale in excluding Walker from the lead person position. Instead, Walker has focused largely on the shortcomings of the people that

Jones did choose for that position, emphasizing the respects in which he was better suited than they were to serve as lead person. But at most, this line of attack suggests that Jones' assessment of their relative capabilities was erroneous; it does not suggest that her stated rationale was a cover for retaliation. *See Hudson*, 375 F.3d at 561 ("Pretext is more than a mistake on the part of the employer; it is a phony excuse.").

Finally, Walker asserts that he was subjected to a hostile working environment in retaliation for his complaints. *See, e.g.*, *Stutler v. Illinois Dep't of Corrections*, 263 F.3d 698, 703 (7th Cir. 2001) (hostile environment can be retaliatory). Walker identifies two principal components to the harassment. First, he asserts that Jones began following him around the warehouse to spy on him and also to whistle tunes like "This Old Man" and "Three Blind Mice" in his presence, which Walker construed as demeaning. Second, he asserts that some of his co-workers called him derogatory names (for example, one referred to him as an "f—ing Polack") and threatened to harm him.

These allegations do not show that the defendants subjected Walker to a hostile environment for retaliatory reasons, however. Jones' conduct, even if motivated by a retaliatory animus, was, as the defendants assert, too tepid to constitute actionable harassment. *See id.* at 704. As we have noted, harassing conduct must be so severe and/or pervasive as to render the workplace hostile for both the plaintiff and the reasonable employee. *Smith v. Northeastern Ill. Univ.*, *supra*, 388 F.3d at 566; *see also Stutler*, 263 F.3d at 703. Jones' behavior, if annoying, does not rise to that level. As for the conduct of Walker's co-workers, we perceive two shortcomings in Walker's case. First, we are not convinced that Walker has presented sufficient proof that Mueller was negligent in its response to these incidents, such that the conduct of the offending employees may be attributed to the company itself for purposes of liability. *See Knox v. Indiana*, 93 F.3d 1327, 1334 (7th Cir. 1996). Although Walker was

unsatisfied with the response, the facts do not support the inference that the defendants' failure to do more was unreasonable. That point aside, Walker has not shown that Mueller and Jones handled these incidents in a materially different way than they addressed comparable conduct, a showing that is key to making a prima facie case of retaliation via the indirect method. *See Stone*, 281 F.3d at 644. By Walker's own account, this was a factionalized workplace where name-calling and hostility among the warehouse workers was common. R. 30 ¶¶ 58-59. Nothing about Walker's treatment by co-workers, or the defendants' response, was sufficiently distinct as to suggest that they were retaliatory as opposed to yet another iteration of the inappropriate behavior that appears to have been common at the Addison facility.

C.  Denial of Walker's request for additional time to respond to summary judgment motion

After Mueller and Jones filed their summary judgment motion below, Walker sought an extension of time to respond to that motion. Walker sought the extension based on outstanding discovery disputes concerning the production of payroll records that might establish, contrary to the defendants' assertion, that the company paid the lead person more than other warehouse workers. By establishing a pay differential, Walker hoped to show that Jones' decision not to place him in the lead person position amounted to an adverse employment action for purposes of his retaliation claim. Walker did not get the additional time that his attorneys had hoped for, and because they were unable to assemble records establishing that the lead person was paid more than other workers in support of Walker's summary judgment response, the district court held that Jones' refusal to select Walker for the position was not an adverse employment action. Walker now contends that the district

court erred in declining to give him more time to complete discovery on this question and to respond to the summary judgment motion.

Walker acknowledges that in order to prevail on this argument, he must show not only that the district court abused its discretion in not giving him more time, *e.g.*, *Woods v. City of Chicago*, 234 F.3d 979, 990 (7th Cir. 2000), but also that his inability to complete discovery as to the payroll documents worked to his actual and substantial prejudice, *e.g.*, *Gile v. United Airlines, Inc.*, 95 F.3d 492, 495 (7th Cir. 1996). Walker cannot establish that the court's decision prejudiced him, ultimately. As we noted above, even if we indulge the assumption that the lead person was paid more than other workers and that the refusal to hire an individual for that position might constitute an adverse employment action, Walker's contention that Jones' decision not to choose him for that spot was retaliatory fails for another reason, namely that Jones had at least one legitimate, non-retaliatory reason not to choose him which Walker has not shown to be pretextual. The payroll records have no bearing on Jones' rationale.

## III.

For the reasons we have discussed, we AFFIRM the district court's entry of summary judgment in favor of the defendants, as well as the district court's decision not to give the plaintiff additional time in which to respond to defendants' summary judgment motion.

**A true Copy:**

   **Teste:**

                              _____
                              *Clerk of the United States Court of*
                              *Appeals for the Seventh Circuit*