In the

# United States Court of Appeals

## For the Seventh Circuit

No. 10-3135

L. V. CRAWFORD and YVETTE CRAWFORD,

*Plaintiffs-Appellants,*

*v.*

COUNTRYWIDE HOME LOANS,
INCORPORATED, doing business as
AMERICA'S WHOLESALE LENDER, et al.,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Indiana, South Bend Division.
No. 3:09CV247—**Philip P. Simon**, *Chief Judge.*

ARGUED APRIL 12, 2011—DECIDED JULY 21, 2011

Before KANNE and EVANS, *Circuit Judges*, and CLEVERT, *District Judge*.[*]

[*] The Honorable Charles N. Clevert, Chief Judge of the United States District Court for the Eastern District of Wisconsin, sitting by designation.

KANNE, *Circuit Judge.*  Yvette and L.V. Crawford were evicted from their home by sheriff's deputies enforcing a state court foreclosure judgment. Their mortgagee, Countrywide Home Loans, Inc., had obtained the judgment after the Crawfords defaulted on their mortgage. The Crawfords sought relief in federal court, naming Countrywide, their foreclosure suit counsel, their county sheriff, and their county board of commissioners in a slipshod complaint that spanned twenty-two counts. On various motions, the district court dismissed two defendants, declined to allow the addition of two others, dismissed two claims for want of subject matter jurisdiction under the *Rooker-Feldman* doctrine, and ultimately entered summary judgment in favor of the remaining defendant. We affirm.

## I. BACKGROUND

Countrywide originated a mortgage loan to the Crawfords, an African-American couple, in 2001. They used the loan to purchase a home in La Porte, Indiana, where they lived until employment difficulties and mounting medical bills relating to their physical disabilities caused them to fall behind in their mortgage payments. Fearing foreclosure, they agreed to pay $995 to Foreclosure Solutions in exchange for its help in reaching a renegotiation deal with their mortgagee.

Countrywide did not renegotiate the loan's terms and instead initiated a foreclosure proceeding in La Porte County Circuit Court. Foreclosure Solutions informed the Crawfords that it had hired attorney Gary Dilk to

represent them in the proceedings. Dilk entered an appearance in the suit, but he never contacted them and did not resist Countrywide's motion for summary judgment; the record indicates that neither Foreclosure Solutions nor Dilk ever did anything else on the Crawfords' behalf. The state court entered a foreclosure judgment in the mortgagee's favor on August 4, 2006. The Crawfords moved for relief from the foreclosure judgment on August 2, 2007, but the state court denied their motion.

A sheriff's sale of the home occurred on December 13, 2006. Mortgage company Fannie Mae purchased the property, but it continued to use Countrywide to service it. Shortly after the Crawfords' motion for relief was denied, Fannie Mae moved for a writ of assistance to evict the Crawfords and take possession of its property. The writ of assistance issued on June 25, 2008, but the Crawfords convinced the La Porte circuit court to stay their eviction during their appeal of the court's denial of their motion for relief from the foreclosure judgment. That stay was conditioned, however, upon the Crawfords' monthly payment of $1,200 into a court-administered escrow account. When the Crawfords did not make full payment in October 2008, the writ of assistance became immediately effective. In November 2008, Countrywide filed a notice that it intended to evict the Crawfords pursuant to the writ of assistance.

An unidentified man appeared at the Crawfords' home twice in May 2009, claiming to be from the La Porte County Sheriff's Department (though he was not in

uniform). He told them both times that he would return with uniformed deputies to evict them around the end of the month. On May 27, 2009, La Porte County Sheriff's Deputies arrived at the Crawfords' home and ordered them to depart in compliance with the court's orders. The deputies had a barking dog with them, and they allegedly threatened to release the dog into the house, though their reasons for doing so do not appear in the record. The Crawfords complied and departed the home.

The Crawfords subsequently filed nearly simultaneous suits in the La Porte Circuit Court and in the United States District Court for the Northern District of Indiana. The substantially identical suits named Countrywide, the La Porte County Board of Commissioners, La Porte County Sheriff Michael Mollenhauer, attorney Gary Dilk, and a John Doe as defendants. The defendants removed the state court action to the federal district court, the two cases were effectively consolidated, and the district court administratively closed the original federal action. Dilk, Sheriff Mollenhauer, and the Commissioners moved to dismiss under Federal Rule of Civil Procedure 12(b)(6). The district court granted their motions on February 12, 2010. In the same order, it also dismissed the John Doe defendant on procedural grounds and denied the Crawfords' motion to add Foreclosure Solutions and the Bank of America as additional defendants.

Countrywide, the sole remaining defendant,[1] then moved for summary judgment on all of the Crawfords' claims. In opposition, the Crawfords moved the court both to continue the proceedings pending additional discovery and also to judicially notice a wealth of materials. The district court denied the Crawfords' motions, dismissed aspects of two of their claims as jurisdictionally barred under the *Rooker-Feldman* doctrine, and entered summary judgment in favor of Countrywide on each of the remaining claims.

The Crawfords timely appealed the district court's final judgment. They later filed a motion asking this court to take judicial notice of materials similar to those presented to the district court pertaining to the practice of "robo-signing" by mortgagees and national economic conditions. We denied their motion by our order of December 9, 2010.[2]

---

[1] Four times in the Appellants' Brief, counsel refers to actions taken by "Wells Fargo." We presume counsel meant to refer to Countrywide.

[2] Despite this ruling, the Crawfords continue to argue in their reply brief that we must take judicial notice of their proffered materials. We decline to reconsider our ruling, even though they have enticed us with additional—though still wholly irrelevant—materials purporting to show a foreclosure crisis and Countrywide's predatory lending practices.

## II. ANALYSIS

The Crawfords present four issues on appeal. We will take up their jurisdictional issue first to demonstrate that this case is properly before us. We will then consider the propriety of the district court's entry of summary judgment before evaluating its dismissal of two defendants due to the Crawfords' failure to state claims against them. Finally, we will briefly address the district court's denial of the Crawfords' motion to add a defendant.

### A. Subject Matter Jurisdiction

The Crawfords first ask this court to review whether the *Rooker-Feldman* doctrine divested the district court of subject matter jurisdiction. We must satisfy ourselves at the outset that we have jurisdiction over this appeal, even though all parties argue that we do and that the doctrine does not apply. *See Gen. Ins. Co. of Am. v. Clark Mall Corp.*, ___ F.3d ___, ___, 2011 WL 1663374, at *3 (7th Cir. May 4, 2011).

The *Rooker-Feldman* doctrine is jurisdictional in nature. *Freedom Mortg. Corp. v. Burnham Mortg., Inc.*, 569 F.3d 667, 670 (7th Cir. 2009). It prevents lower federal courts from reviewing state-court judgments, over which only the United States Supreme Court has federal appellate jurisdiction. *Skinner v. Switzer*, ___ U.S. ___, ___, 131 S. Ct. 1289, 1297 (2011). It is a "narrow doctrine, confined to cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting

district court review and rejection of those judgments." *Kelly v. Med-1 Solutions, LLC*, 548 F.3d 600, 603 (7th Cir. 2008) (*quoting Lance v. Dennis*, 546 U.S. 459, 464 (2006)). The doctrine does not prevent state-court losers from presenting independent claims to a federal district court, even if the new claims involve questions related to those in the original state court proceedings. *Skinner*, 131 S. Ct. at 1297.

The district court correctly considered the *Rooker-Feldman* doctrine *sua sponte*, *see Carter v. AMC, LLC*, ___ F.3d ___, ___, 2011 WL 1812524, at *1 (7th Cir. May 13, 2011), and it concluded that the doctrine applied to only two of the Crawfords' twenty-two claims. It determined that their first claim—that Countrywide's foreclosure and eviction deprived them of their fundamental fairness and equal protection rights—required dismissal to the extent the Crawfords complained of injury caused by the state-court judgment of foreclosure, as opposed to injury caused by the defendants' actions in enforcing the judgment.[3] *See Taylor v. Fed. Nat'l Mortg. Ass'n*, 374 F.3d 529, 532 (7th Cir. 2004) (holding that requesting recovery of a foreclosed-upon home is "tantamount to a request to vacate the state court's judgment of foreclosure" and that such relief is barred by the

---

[3] It dismissed the aspects of the claim only to the extent that the doctrine operated to divest it of jurisdiction. *See Crawford v. Countrywide Home Loans, Inc., et al.*, 2010 WL 3273715, at *5 (N.D. Ind. Aug. 16, 2010) ("[S]ome of the Crawfords' claims constitute in essence a challenge to the outcome of the state court foreclosure proceedings, and to that extent they are barred by the *Rooker-Feldman* doctrine . . . .").

*Rooker-Feldman* doctrine). The district court construed the obtuse ninth claim—seeking a declaratory judgment that the defendants were not entitled to recover on quasi-contractual theories—as presenting belated defenses to Countrywide's foreclosure complaint, the consideration of which would also be barred by the doctrine. Accordingly, it found dismissal to be appropriate for the jurisdictionally barred aspects of these two claims.

We review the district court's determination of its subject matter jurisdiction in light of the *Rooker-Feldman* doctrine *de novo*. *Kelly*, 548 F.3d at 603-04. "In applying the *Rooker-Feldman* doctrine, the immediate inquiry is whether the federal plaintiff seeks to set aside a state court judgment or whether he is, in fact, presenting an independent claim." *Taylor*, 374 F.3d at 532 (quotation marks omitted). The Crawfords' briefs do nothing to clarify exactly what relief the Crawfords sought in their complaint—specifically, whether reversal of the state court judgment of foreclosure was a necessary part of that relief and, if so, to which claims that relief pertained. They argue only that the *Rooker-Feldman* doctrine is over-applied by district courts and therefore should not have been found to preclude jurisdiction below. But the Supreme Court's general admonitions regarding frequent and inappropriate application of the *Rooker-Feldman* doctrine, *see, e.g.*, *Skinner*, 131 S. Ct. at 1297, shed no light on its application given the procedural posture and facts of the Crawfords' *particular* case. Indeed, their briefs do not even mention the dismissal of two of their claims, let alone explain why dismissal was erroneous. Their opposition to the dismissals is therefore waived. *See Mahaffey v. Ramos*, 588 F.3d 1142, 1146 (7th Cir. 2009).

Regardless, we are convinced that the district court properly applied the *Rooker-Feldman* doctrine in considering the first and ninth claims. "To determine whether *Rooker-Feldman* bars a claim, we look beyond the four corners of the complaint to discern the actual injury claimed by the plaintiff." *Johnson v. Orr*, 551 F.3d 564, 568 (7th Cir. 2008). The Crawfords' injury in claims one and nine—the foreclosure of their mortgage—was effectuated by the state court's judgment. At oral argument, the Crawfords' counsel was pointedly asked, "Aren't you really attacking the state court proceeding?" He responded, "That is certainly part of what we were doing, Your Honor. And that's why I think there is a *Rooker-Feldman* issue that has to be addressed. We are attacking both the lower court—the state trial court—judgment as well as the manner in which that judgment was enforced . . . ." Given this concession, we have no trouble concluding that the dismissed claims were "of the kind from which the doctrine acquired its name: cases brought by state-court losers . . . inviting district court review and rejection of [the state court's] judgments." *Skinner*, 131 S. Ct. at 1297 (*quoting Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). As such, the district court did not err in dismissing those aspects of the Crawfords' complaint as jurisdictionally barred under the *Rooker-Feldman* doctrine.[4]

---

[4] After finding dismissal to be appropriate, the district court analyzed the merits of the two claims in the alternative. It determined that, if it was incorrect regarding *Rooker-Feldman*, summary judgment in Countrywide's favor would have been

(continued...)

We next consider whether the district court had subject matter jurisdiction for the twenty remaining claims. None of those claims cogently attacks the underlying state-court judgment. To the extent that any claim alleged an independent ground for relief, relief could be granted without necessarily impugning the state court's judgment. *See Remer v. Burlington Area Sch. Dist.*, 205 F.3d 990, 998 (7th Cir. 2000) (*Rooker-Feldman* doctrine not implicated where district court "would be free to fashion relief that would not contradict the state circuit court's injunction"); *TruServ Corp. v. Flegles, Inc.*, 419 F.3d 584, 591 (7th Cir. 2005). These claims may involve facts or questions relevant in the original state-court action, but because the claims were neither decided in the state court nor inextricably intertwined with its judgment, the *Rooker-Feldman* doctrine did not divest the district court of jurisdiction to consider their merits. *Skinner*, 131 S. Ct. at 1297; *Kelly*, 548 F.3d at 603. Accordingly, the district court did not err in considering the Crawfords' remaining claims.

### B. Summary Judgment

The district court granted summary judgment in Countrywide's favor on all remaining counts. The Crawfords contend that summary judgment was inap-

---

[4] (...continued)
appropriate on the first and ninth claims. For the sake of completeness, we likewise note that the district court's alternative analyses were appropriate and correct.

propriate for two reasons: the district court applied an incorrect standard, and issues of material fact persisted. We review the district court's entry of summary judgment *de novo. Estate of Davis v. Wells Fargo Bank*, 633 F.3d 529, 539 (7th Cir. 2011).

### 1. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When Countrywide's motion for summary judgment adequately challenged the elements of their claims, the Crawfords assumed the burden to identify specific facts in the record that demonstrated a genuine issue for trial. *Estate of Davis*, 633 F.3d at 539. The Crawfords protest that burden, however. They argue that Countrywide's materials in support of its motion were insufficient to foreclose the possibility that there were disputes of material fact, so no burden to produce supportive evidence fell to them.

The Crawfords' argument arises from their misapplication of *Adickes v. S. H. Kress & Co.*, 398 U.S. 144 (1970). *Adickes* involved a white woman who was refused service at a Hattiesburg, Mississippi, restaurant she entered with black companions in 1964. *Id.* at 146. She sued the restaurant under 42 U.S.C. § 1983, alleging that its refusal to serve her and her subsequent arrest for disturbing the peace resulted from a conspiracy between

the restaurant and local police. *Id.* at 148. The Supreme Court reversed a grant of summary judgment in favor of the restaurant because the restaurant "failed to carry its burden of showing the absence of any genuine issue of fact." *Id.* at 153. Specifically, it did not meet its burden "*to foreclose the possibility* that there was a policeman in the Kress store while petitioner was awaiting service, and that this policeman reached an understanding with some Kress employee that petitioner not be served." *Id.* at 157 (emphasis added). Seizing on the italicized language, the Crawfords suggest that *Adickes* stands for the proposition that no party is entitled to summary judgment unless the movant wholly extinguishes the possibility that the events forming the basis of his opponent's claims occurred.

A party moving for summary judgment need not introduce evidence rendering its opponents' claims altogether impossible in order to trigger the opponent's burden to answer with its own supporting evidence. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Indeed, *Celotex* flatly contradicts the Crawfords' interpretation of *Adickes*:

> [W]e do not think the *Adickes* language . . . should be construed to mean that the burden is on the party moving for summary judgment to produce evidence showing the absence of a genuine issue of material fact, even with respect to an issue on which the nonmoving party bears the burden of proof. Instead, as we have explained, the burden on the moving party may be discharged by "showing"—that is, pointing out to the district

court—that there is an absence of evidence to support the nonmoving party's case.

*Id.* at 325. Countrywide's summary judgment motion comprehensively challenged the factual support and legal soundness of the Crawfords' myriad claims, and Countrywide filed a statement of material facts it alleged were not in dispute. The Crawfords thus acquired the burden to introduce affidavits or cite evidence in the record demonstrating what genuine issues remained for trial. Fed. R. Civ. P. 56(e) (2009); N.D. Ind. L.R. 56.1(a) (2009); *Eberts v. Goderstad*, 569 F.3d 757, 767 (7th Cir. 2009). The Crawfords did not meet that obligation. They instead submitted a statement alleging predatory lending practices by Countrywide, never addressing Countrywide's proposed facts. Under the court's local rules—and as contemplated by Fed. R. Civ. P. 56(e)—the district court appropriately took Countrywide's stated facts to be undisputed. It then considered which, if either, party was entitled to judgment as a matter of law given those facts. We conclude that the district court thus employed the proper standard for summary judgment.

### 2. *Issues of Material Fact*

The Crawfords appear to contend that, even if the district court articulated the correct standard, the district court erred in applying that standard in two ways. First, it denied their motions to strike portions of an affidavit submitted by Countrywide, to allow additional discovery, and to take judicial notice of proffered materials.

Second, their submitted materials showed that genuine disputes of material fact remained. Neither contention has merit, and both are perfunctory and undeveloped.

The district court declined to strike from a Countrywide employee's affidavit, submitted in support of summary judgment, an allegedly conclusory portion stating that neither the Crawfords' race nor their disabilities factored into Countrywide's actions against them. In arguing that the district court should have stricken the statement as a legal conclusion lacking adequate foundation and that the district court erroneously relied on it in granting summary judgment, the Crawfords do not address the district court's actual rationale for denying their motion. It had determined that striking the statement was unnecessary because the Crawfords neither moved to strike nor challenged with opposing evidence another of the affiant's statements: "Countrywide has taken all of the foregoing and other relevant actions against the Crawfords because of the Crawfords' default under the loan documents and failure to make the payments as required to stay enforcement of the judgment."[5] The district court found that this unchallenged assertion—in light of the fact that the Crawfords "offered *no evidence at all* of discriminatory motive in Countrywide's decisions," *Crawford*, 2010 WL 3273715,

---

[5] On appeal, the Crawfords claim they moved to strike this portion of the affidavit as well. (Appellants' Br. at 13.) That claim is not correct. Their motion to strike pertained only to the statement regarding race and disability. (R. at 524.)

at *4—would defeat the Crawfords' claims of unlawful discrimination. The Crawfords leave this reasoning unaddressed on appeal, and we find that the district court did not err in denying the motion to strike.

The Crawfords also take issue with the district court's denial of their motion to delay its consideration of summary judgment to allow them additional time to conduct discovery as allowed by Rule 56. We review orders denying discovery requests for an abuse of discretion, *Little Co. of Mary Hosp. v. Sebelius*, 587 F.3d 849, 856 (7th Cir. 2009), and appellants must demonstrate prejudice from the denial in order to secure relief from the district court's order on appeal, *Walker v. Mueller Indus., Inc.*, 408 F.3d 328, 334 (7th Cir. 2005). The Crawfords present no argument as to why the denial was either an abuse of discretion or prejudicial; they only state the truism that Rule 56 would have allowed the district court to grant their motion. They have thus waived their discovery request argument. *See Gross v. Town of Cicero, Ill.*, 619 F.3d 697, 704-05 (7th Cir. 2010).

The district court also denied the Crawfords' motion to take judicial notice of materials—a settlement, lawsuits, pending enforcement actions between state attorneys general and Countrywide, websites, news articles, a press release, a speech, and position papers—they offered to show Countrywide's predatory lending practices. We review the district court's refusal to take judicial notice of proffered materials for an abuse of discretion. *Waid v. Merrill Area Pub. Sch.*, 130 F.3d 1268, 1272 (7th Cir. 1997). The district court found that the

materials were not of the type of which it could take judicial notice under Rule 201(b) of the Federal Rules of Evidence. It noted that the Crawfords sought "judicial notice not of particular discrete facts, but of a number of whole documents" and asked why this would be "a matter of judicial notice and not more generally the admissibility of the documents they have identified." *Crawford*, 2010 WL 3273715, at *4. In keeping with their pattern throughout this appeal, the Crawfords do not address either of these salient points. They correctly note that courts have occasionally considered particular economic and social conditions without the admission of evidence on those points. *See, e.g.*, *Garner v. Louisiana*, 368 U.S. 157, 195-96 (1961) (collecting cases). But these examples in no way indicate that courts must take judicial notice of a universe of litigation actions and articles when a party offers that universe without a careful delineation of the facts to be noticed. We deem their undeveloped argument regarding judicial notice waived. *See Gross*, 619 F.3d at 704-05.

The Crawfords' final challenge to the summary judgment order is that they demonstrated disputes of material fact, thus precluding summary judgment. But just what facts they allege to be disputed—and how those facts are material—is a mystery unresolved by their opening brief. Like their response to Countrywide's summary judgment motion, their briefs in this court are "long on generalities on the subject of predatory lending and about the unfairness of their treatment, but short on . . . analysis of their particular claims." *Crawford*, 2010 WL 3273715, at *5. Not a single line of their briefs

specifically addressed any of their individual claims, let alone refuted the district court's persuasive sixteen-page analysis that cogently addressed the facts and law of each individual claim in depth.

The Crawfords did not meet their burden to come forward with *specific facts* showing that there were genuine issues for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). On appeal, they still identify only three *categories* of facts in the affidavit they submitted in opposition to summary judgment: "(1) the events which ensnared them in the Countrywide web; (2) the bungling of Foreclosure Solutions and attorney Gary Dilk . . . and; (3) the eviction from their home by police officers using a dog to frighten an older African-American woman with disabilities whose husband was at work." (Appellants' Br. at 14.) The first category pertains to their allegations of predatory lending and does not relate "specific facts." The district court correctly determined that the affidavit's allegations within this category were not material. The second and third categories pertain only to defendants the district court had dismissed before the summary judgment stage, so those allegations likewise could not have been material.

A genuine dispute of material fact exists only when the evidence could support a reasonable jury's verdict for the non-moving party. *Spivey v. Adaptive Mktg. LLC*, 622 F.3d 816, 822 (7th Cir. 2010). The district court ably demonstrated that the evidence before it—even when crediting the affidavit the Crawfords' submitted in op-

position to the summary judgment motion—simply could not support a verdict in the Crawfords' favor on any of their claims. In its claim-by-claim analysis, the district court noted that there was no evidence of the elements for some claims and that other individual "claims" did not state independently cognizable causes of action. As the Crawfords do not argue against any of the district court's convincing reasoning on any specific claim, we have no reason to conclude that the district court erred in granting summary judgment.

## C.  *Dismissal of Claims Against Individual Defendants*

We turn next to the dismissal of the Crawfords' claims against the La Porte County Sheriff and their foreclosure attorney.[6] To survive the defendants' Rule 12(b)(6) motions, the Crawfords' second amended complaint must have stated sufficient facts to render their claims against the sheriff and the attorney complete and plausible. *See Estate of Davis*, 633 F.3d at 533. Our review is somewhat confounded by the Crawfords' complaint, which the district court accurately described as a "legal morass" because its claims lacked any explanation of what facts formed the bases for relief under the legal theories invoked. *Crawford v. Countrywide Home Loans, Inc.*, 2010 WL 597942, at *2 (N.D. Ind. Feb. 12, 2010). Nevertheless, we construe the complaint in the light most favorable to

---

[6] The Crawfords have not appealed the dismissal of the John Doe defendant or the La Porte County Board of Commissioners.

the Crawfords and review the district court's dismissal of the claims against Sheriff Mollenhauer and attorney Dilk *de novo*. *Active Disposal, Inc. v. City of Darien*, 635 F.3d 883, 886 (7th Cir. 2011).

### 1. Sheriff Mollenhauer

The district court granted Sheriff Mollenhauer's motion to dismiss for a variety of reasons. While the Crawfords, in opposition to the motion, suggested that the Sheriff's Department discriminated against them based on their disabilities, they never identified even one of the twenty-two claims to which that suggestion pertained. And though the Crawfords suggested that their pleading at a minimum stated a claim for excessive force in the eviction method, the complaint never referred to or alleged excessive force. Other claims that they argued implicated the Sheriff named only the lenders, consisted of a bald and unexplained assertion that all defendants violated the due course of law, or could not support the Sheriff's liability as a matter of law.

In their brief to this court, the Crawfords do not address the district court's reasons for its judgment. Rather, in two scant sentences they contend that their allegations met the plausibility standard and that the Sheriff was on notice that he violated "specified" statutes (without specifying which statutes were supposedly violated). We find the district court's reasons to have been sound. None of the Crawfords' claims applies any facts to its cause of action to suggest how the Sheriff could

conceivably, let alone plausibly, be liable.[7] *See Ashcroft v. Iqbal*, ___ U.S. ___, ___, 129 S. Ct. 1937, 1949 (2009).

### 2. *Attorney Dilk*

In response to Dilk's motion to dismiss, the Crawfords clarified which nine claims implicated their erstwhile attorney. The district court evaluated each claim in detail and correctly noted that it did not need to accept as true the Crawfords' conclusory allegations that constituted mere threadbare recitals of the elements of their myriad claims. *See Iqbal*, 129 S. Ct. at 1949. It discussed each claim in detail and ultimately concluded that "[e]ach and every one of the nine claims the Crawfords now clarify they assert against Dilk is . . . nothing more than captious and meritless." *Crawford*, 2010 WL 597942, at *3.

On appeal, the Crawfords again do not address the district court's reasoning on any individual claim. Rather, they argue that their complaint set forth a claim against their former attorney for breaching a contract of which they were the intended beneficiaries (though

---

[7] As just one example, paragraph 39 of the complaint reads (in its entirety), "As a Fourteenth Claim, all Defendants have breached contracts of which the Crawfords are intended third-party beneficiaries." No mention is made of what contracts were breached, and no facts regarding any contract were pled. Neither did the Crawfords describe how a county sheriff could have breached any contract in the course of his official duties.

they do not identify the contract at issue). Dilk's abortive representation of them in the state foreclosure action, they allege, led to the default judgment of foreclosure and to the litany of harms that followed. They therefore argue that Dilk was "on notice that his alleged failures contributed to the civil rights violations suffered by the Crawfords." (Appellants' Br. at 16.) Because these statements neither address nor undermine the district court's analysis, we see no indication of error in its granting Dilk's motion to dismiss.[8]

### D. Denial of Leave to Add Defendants

The Crawfords' fourth and final claim deserves little attention. They moved to add Bank of America, a once-removed parent organization to Countrywide, as another defendant. The proposed addition to the second amended complaint required leave of the district court, *see* Fed. R. Civ. P. 15(a)(2), and the district court denied their motion.[9] We review that decision for an abuse of discretion. *Foster v. DeLuca*, 545 F.3d 582, 583 (7th Cir. 2008). The district court had broad discretion regarding leave to add defendants, especially in light of the patent futility of the Crawfords' motion and their repeated

[8] The Crawfords did plead facts that suggest they may have viable claims of malpractice or fraud against Dilk and Foreclosure Solutions, but they did not present those causes of action in this case.

[9] The Crawfords have not appealed the denial of their motion to add Foreclosure Solutions as a defendant.

failure to cure deficiencies in their pleadings. *See Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 432 (7th Cir. 2009). The district court noted that the Crawfords neither made any direct allegations against Bank of America nor argued that Countrywide was a mere alter ego of Bank of America so as to pierce liability protection offered by their separate corporate structure. On appeal, the Crawfords devote many pages to proving that a merger occurred, but not a single line to arguing why that alone renders the district court's denial abusive. We find the district court's reasoning sound and conclude that it did not err in denying the Crawfords' motion to add Bank of America as a defendant.

### III. Conclusion

Because we find no error in the district court's determinations, we AFFIRM its judgments in all respects. However, we VACATE the district court's order of August 10, 2010, and REMAND the case for the limited purpose of permitting the district court to enter a new order specifying which aspects of the Crawfords' complaint were dismissed on jurisdictional grounds and remanding those aspects to the state court from which the case was removed.