NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted August 10, 2011[*]
Decided August 17, 2011

**Before**

FRANK H. EASTERBROOK, *Chief Judge*

JOHN L. COFFEY, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

No. 11-1652

| | |
|---|---|
| ZONG LOR, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Eastern District of Wisconsin. |
| *v.* | No. 09-CV-00666 |
| WILLIAM B. KELLEY, et al., | Charles N. Clevert, Jr., |
| *Defendants-Appellees.* | *Chief Judge.* |

**O R D E R**

Wisconsin prisoner Zong Lor sued several medical personnel and administrators at Kettle Moraine Correctional Institution (KMCI) under 42 U.S.C. § 1983, claiming deliberate indifference to his painful prostate condition. The district court granted summary judgment for the defendants, and Lor appeals. We affirm.

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

Lor's claims arise from treatment he received at KMCI between June and December 2009 for prostatitis (inflamation of the prostate gland). We construe the evidence, and draw all reasonable inferences, in his favor. *See, e.g., Minix v. Canarecci*, 597 F.3d 824, 830 (7th Cir. 2010). On June 7 Lor submitted a Health Service Request (HSR) to prison physician Dr. William Kelley, complaining that for one week he had experienced "pressure, pain, and discomfort in my lower stomach" and "mild pain and pressure in the rectum area, to the testicles, and bladder." The next day, June 8, Kelley examined Lor. In an affidavit Lor recalls experiencing "extreme pain and discomfort" during the examination. Kelley noted from the examination a "soft" abdomen, but otherwise found "no abnormal peritoneal signs of an inflammatory process." Kelley did not perform a anoscopy (a visual examination of the anal canal with an anoscope); according to his notes, the room in which he examined Lor was not equipped for an anoscopy, so he scheduled an appointment for that examination in one month. According to his affidavit, Kelley assured Lor that he did "not find any significant medical conditions requiring further treatment or assessment at that visit."

Three days later Lor's condition worsened. On June 11 he submitted another HSR to Kelley asking to be seen as soon as possible. He noted that on June 8 he had been examined "regarding mild pain and pressure in my lower stomach, rectum, testicles, and bladder," but the "pain and pressure in my lower stomach is now a burning sensation in the prostate area and I feel nerve and muscle spasms in the urethra." A nurse replied that he should keep track of his pain and that the doctor would see him in one month.

The next day, June 12, Lor experienced what he characterized in his affidavit as "excruciating" pain and burning in his prostate. After a unit sergeant called for an emergency medical response, Lor was seen by nurse Laurie Blum, who examined him and sent him to a hospital emergency room. There an attending doctor performed a rectal examination; diagnosed Lor with abdominal pain, urinary tract infection, and prostatitis; and prescribed Doxycycline (an antibiotic) and Vicodin. At a follow-up examination three days later, Kelley performed rectal and prostate examinations and found no evidence of tenderness, enlargement, or "bogginess" (soft tissue) in the prostate. Laboratory results indicated a normal urinalysis and white blood count.

Throughout June and July, Lor submitted six HSRs complaining of ongoing genital and rectal pain; in response he received two follow-up appointments with Kelley. When Kelley examined Lor on June 22 he administered a prostate-specific antigen test, prescribed an additional week of Doxycycline, and noted Lor's reports of experiencing prostate spasms and burning sensations to a "lesser degree" than before. The Health Unit Services manager William McCreedy was present at that examination and noted that Lor's condition was "improving." Kelley examined Lor again on July 3; he noted that Lor reported less pain in

the prostate but more pain in the urethra, and he wrote a two-week prescription for Bactrim (an antibiotic). A urinalysis test two weeks later was normal.

When his prostatitis symptoms continued in August, Lor began submitting HSRs to Kelley and McCreedy asking to see an outside urologist; Lor thought that he might have nonbacterial prostatitis, for which antibiotics are ineffective. Kelley examined Lor on August 5, performed a rectal examination, found no enlargement or "bogginess" in Lor's prostate, and ordered various laboratory tests, ultrasounds of Lor's kidneys and bladder, and a psychological evaluation of Lor's coping skills. The kidney and bladder ultrasounds and the laboratory tests all came back normal, and the psychologist reported that Lor "did appear to be overreacting" to his condition. McCreedy spoke with Lor about his ongoing prostatitis symptoms on August 26, and the next day Kelley examined him. The score sheet that Kelley used to evaluate Lor's prostate symptoms indicated that Lor had "mild" symptoms. In response to Lor's concerns about nonbacterial prostatitis, Kelley prepared a "Prior Authorization for Therapeutic Level of Care" form asking the prison's Medical Review Committee to allow Lor to receive a rectal ultrasound of the prostate from an outside specialist. On September 2 the committee rejected Lor's request for an outside rectal ultrasound and instead suggested a six-week trial of Ciprofloxacin ("Cipro," another antibiotic) with up to six weeks of additional treatment and alpha blockers (muscle relaxers). Kelley followed the committee's suggestion and prescribed Cipro the next day.

Between June and August Lor filed four administrative complaints against Kelley and McCreedy, complaining about the treatment he received for prostatitis and reiterating his desire to see a urologist. Prison administrator James LaBelle reviewed Lor's treatment history after receiving each complaint and dismissed each one in turn.

Lor continued to experience prostatitis symptoms after the first six-week trial of Cipro. He submitted an HSR on October 18, explaining that he still felt genital pain but that the fullness in his rectum had improved. Kelley examined him on October 21 and prescribed another six-week trial. Lor complained of symptoms when that trial ended in December, but he was soon transferred out of KMCI.

After exhausting his administrative remedies, Lor filed this § 1983 suit asserting deliberate indifference against Kelley, McCreedy, nurse Blum, and administrator LaBelle, as well as the prison warden Michael Dittmann. He claimed that Kelley acted with deliberate indifference to his prostatitis on June 8 when he did not conduct an anoscopy or provide pain medication. He also claimed that Kelley and McCreedy were deliberately indifferent to his ongoing genital and rectal pain when they refused his requests to see an outside specialist after he complained that the antibiotics were ineffective. He claimed that Blum deliberately refused his requests for treatment, that Dittmann deliberately ignored Kelley's

inadequate treatment, and that LaBelle wrongfully dismissed his administrative complaints without an investigation.

The district court granted summary judgment for the defendants, concluding that Kelley was not deliberately indifferent to Lor's conditions because "Lor's symptoms were not as severe on June 8 as they were on June 12" and no reasonable jury could conclude that Kelley treated Lor with deliberate indifference during the overall course of treatment. The court noted that Kelley examined Lor at least seven times between June and October, ordered tests and prescribed medication, provided "increased treatment modes" in response to Lor's ongoing complaints, and asked the Medical Review Committee to approve a rectal ultrasound. The court also concluded that McCreedy and Dittmann were not liable because they did not personally treat Lor, that Blum was not deliberately indifferent because on June 12 she treated Lor and then promptly sent him to the hospital, and that LaBelle did not act with deliberate indifference by not investigating Lor's complaints because he was entitled to defer to the judgment of medical professionals.

On appeal Lor pursues his claims only against Kelley and McCreedy, and he delineates two separate periods when both men were deliberately indifferent. First he spotlights June 8, when Kelley neither prescribed medication nor secured an examination room for an anoscopy. He next focuses on the subsequent course of treatment, when Kelley and McCreedy refused his requests to see a urologist and continued to prescribe him a course of ineffective antibiotics.

Regarding the treatment he received on June 8, Lor cannot establish that Kelley was deliberately indifferent. To do so, Lor must show not only that his conditions were serious (which the defendants do not contest), but also that the "prison officials acted with a sufficiently culpable state of mind." *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). The record here, however, does not reflect that Kelley was aware of the severity of Lor's pain that day. As the district court noted, Lor's symptoms increased in severity between June 8 and June 12—the day that he went to the hospital. Lor's HSR to Kelley on June 7 described his pain as "mild" and the following day Lor again characterized his condition as "mild," according to the HSR he wrote to Kelley on June 11. Lor's subsequent affidavit (prepared in January 2011) recalls his pain on June 8 as "extreme," but the affidavit does not state that he told Kelley about such pain; at any rate a party may not create an issue of fact at summary judgment by submitting an affidavit that contradicts his own statements roughly contemporaneous with the events at issue. *See Gates v. Caterpillar, Inc.*, 513 F.3d 680, 688 n.5 (7th Cir. 2008). Given this evidence, a reasonable jury could not conclude that Kelley knew that Lor's pain on June 8 was so severe that denying him pain medication or an anoscopy posed an excessive risk of serious harm.

As for Lor's treatment after June 8, no reasonable juror could conclude that Kelley was deliberately indifferent to his condition. During this time, Kelley prescribed and adjusted Lor's antibiotics (from Doxycycline to Bactrim to Rocephin), performed relevant examinations and laboratory tests (e.g., rectal and prostate examinations, kidney and bladder ultrasounds, thyroid tests, lipid panel, urine and blood chemistry, hematology test, hemoccult test for blood in the stool, and urinalysis), and sought outside advice about a specialist referral from the Medical Review Committee. Kelley followed the committee's advice and prescribed Lor with a six-week trial of Cipro and the recommended additional six-week trial when Lor's symptoms continued. Kelley, then, did not "persist in a course of treatment 'known to be ineffective,'" *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010) (quoting *Greeno*, 414 F.3d at 655). Indeed, the antibiotic treatments conformed to the plan outlined on the National Institutes of Health webpage, submitted by Lor, that "[c]hronic prostatitis is treated with a long course (6-12 weeks or longer) of antibiotics." Prostatitis-bacterial-chronic, MEDLINE MED. ENCYC., http://www.nlm.nih.gov/medlineplus/ency/article/000523.htm (last visited August 10, 2011). That webpage elsewhere explains that, even when treating *non*bacterial prostatitis (which Lor thought he had), "[m]any patients are treated with long-term antibiotics to make sure that bacteria are not causing their prostatitis," Prostatitis-nonbacterial-chronic, *supra*, http://www.nlm.nih.gov/medlineplus/ency/article/000524.htm. No juror could infer deliberate indifference from the course of treatment that Kelley prescribed.

Lor also argues that the district court erred in determining that McCreedy was not deliberately indifferent, urging that McCreedy, as an administrator who was present during his examinations, "turned a blind eye" toward Kelley's "ineffective treatment." But because we agree with the district court that Lor has not shown deliberate indifference on Kelley's part, McCreedy cannot be liable for any "personal involvement" with Lor's treatment. *See Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003).

We address two final matters. First, Lor contends that the district court abused its discretion in denying his discovery motion under Federal Rule of Civil Procedure 36(a)(6), in which he had requested an order determining the sufficiency of the defendants' responses to his requests for admissions. The court denied that motion, finding the responses justified. Lor now asserts that "the court did not address each of Lor's challenged responses." But this argument is irrelevant because Lor has not attempted to show that he suffered any actual and substantial prejudice from the motion's denial, as required for reversal. *See Walker v. Mueller Indus., Inc.*, 408 F.3d 328, 334 (7th Cir. 2005); *Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 319 (7th Cir. 2003).

Lastly Lor argues that the district court abused its discretion by excluding a medical-expert report he submitted in opposition to summary judgment. This report was written by

a board-certified emergency physician, who concluded that Lor had been treated below the "standard of care" when he was not given a rectal examination or urinalysis on June 8 or June 11. The court did not consider the report because it determined that the report was "not properly before [it]" at summary judgment. Lor disagrees and insists that the report was "substantively adequate." But the court properly excluded the report because it did not disclose a list of all publications authored by the witness in the previous ten years, *see* Fed. R. Civ. P. 26(a)(2)(B)(iv), a list of the witness's prior testimony from the previous four years, *see id.* 26(a)(2)(B)(v), or a statement of the witness's compensation, *see id.* 26(a)(2)(B)(vi). Lor does not justify the report's deficiencies, *see id.* 37(c)(1); *Gicla v. United States*, 572 F.3d 407, 410 (7th Cir. 2009), and the report's missing information thwarted the defendants' ability to prepare effectively to rebut, cross-examine, or offer a competing expert, *see Walsh v. Chez*, 583 F.3d 990, 994 (7th Cir. 2009). Moreover, the court properly excluded the report because the expert's conclusions in the report were inconsequential and irrelevant to Lor's claims of deliberate indifference against Kelley. The expert opined only that Kelley's treatment on those two days did not meet the "standard of care." Lor submitted his HSR on June 7. Kelley examined him on June 8. On June 12, when the pain was more severe, Lor was sent to a hospital for a thorough exam. The quick medical attention aside, treatment below the standard of care shows negligence and negligence is not enough to make out a claim of deliberate indifference, *see Walker v. Benjamin*, 293 F.3d 1030, 1038 (7th Cir. 2002); *Williams v. O'Leary*, 55 F.3d 320, 324 (7th Cir. 1995); *Steele v. Choi*, 82 F.3d 175, 178 (7th Cir. 1996).

AFFIRMED.