In the

# United States Court of Appeals

## For the Seventh Circuit

No. 10-1549

ESTATE OF DOROTHY DAVIS,

*Plaintiff-Appellant*,

*v.*

WELLS FARGO BANK and LITTON LOAN SERVICING,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 07 C 2881—**Marvin E. Aspen**, *Judge.*

ARGUED NOVEMBER 5, 2010—DECIDED JANUARY 12, 2011

Before EVANS, SYKES, and HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge.* Dorothy Davis was the victim of a predatory mortgage loan in 1999. She sued the original lender and won a judgment that has not been collectable. In this lawsuit, Mrs. Davis (and now, after her death, her estate) sought damages from Wells Fargo Bank, which later bought her loan, and Litton Loan Servicing, which later took over the servicing of her loan. The lawsuit asserted claims for unconscionability

and fraud under Illinois state law, as well as federal claims for violations of the Home Ownership and Equity Protection Act ("HOEPA," 15 U.S.C. § 1639), and race discrimination under the Equal Credit Opportunity Act ("ECOA," 15 U.S.C. § 1691(a)), and race discrimination under the Fair Housing Act ("FHA," 42 U.S.C. § 3604(b)). The district court dismissed most claims under Rule 12(b)(6) as barred by applicable statutes of limitations and others on the merits, and granted summary judgment on the merits of one final claim. Mrs. Davis's estate appeals the dismissal of these claims. We agree with the district court's analysis of all but one claim. The exception is that we conclude that Mrs. Davis's ECOA claim of race discrimination should not have been dismissed at the pleading stage. The error was harmless, however, because the defendants were entitled to summary judgment on the merits of her claim of race discrimination. We affirm the judgment of the district court.

I. *Statutes of Limitations*

The respective limitations periods for each of Mrs. Davis's claims frame the issues we review in this appeal. Unconscionability and fraud claims are subject to a five-year statute of limitations under Illinois law. See 735 ILCS 5/13-205. HOEPA has a one-year statute of limitations for money damages and a three-year statute of limitations for rescission, 15 U.S.C. §§ 1635(f), 1640(e), and the ECOA has a two-year statute of limitations. 15 U.S.C. § 1691e(f). The FHA also has a two-year statute of limitations. 42 U.S.C. § 3613(a)(1)(A).

The original predatory loan was made in 1999, but Mrs. Davis did not file this lawsuit until 2007. The district court determined that continuing violation theories under Illinois and federal law were not applicable. The district court therefore found that the statutes of limitations for Mrs. Davis's various claims barred her claims except to the extent they were based on only the following events: Litton's letter proposing a modification of Mrs. Davis's loan dated September 28, 2005; Wells Fargo's failure to inform Mrs. Davis prior to January 19, 2007, that it was the owner of her mortgage; and Litton's March 2007 payoff demand. See *Davis v. Wells Fargo Bank*, 2008 WL 1775481, at *4 (N.D. Ill. April 17, 2008). Thus, the formation of the mortgage contract in September 1999 fell outside the statute of limitations for each of Mrs. Davis's claims and was not directly actionable. Mrs. Davis has not offered any basis for challenging the district court's statute of limitations determinations. Like the district court, then, we review only whether Litton's September 28, 2005 loan modification proposal, Wells Fargo's failure to identify itself as the holder of Mrs. Davis's mortgage, or Litton's March 2007 payoff demand can support Mrs. Davis's claims.

II. *Motion to Dismiss*

We turn first to Mrs. Davis's claims that were dismissed under Rule 12(b)(6) for failure to state a claim upon which relief could be granted. We review these claims de novo. See *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). When analyzing the sufficiency of a

complaint, we construe it in the light most favorable to the plaintiff, accept well-pleaded facts as true, and draw all inferences in the plaintiff's favor. See *id*. Mrs. Davis's claims could withstand the defendants' motion to dismiss only if she alleged enough facts to render the claims facially plausible, not just conceivable. See *Ashcroft v. Iqbal*, ___ U.S. ___, ___, 129 S. Ct. 1937, 1949 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To withstand a Rule 12(b)(6) challenge after *Iqbal* and *Twombly*, "the plaintiff must give enough details about the subject-matter of the case to present a story that holds together," and the question the court should ask is "*could* these things have happened, not *did* they happen." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404-05 (7th Cir. 2010) (emphasis in original) (plaintiff's claim under Fair Housing Act survived motion to dismiss by "identify[ing] the type of discrimination that she thinks occur[red] . . ., by whom . . ., and when . . . . This is all that she needed to put in the complaint."). Mrs. Davis's claims of unconscionability, fraud, violations of HOEPA, and discrimination under ECOA were based on the following events, as set forth in her second amended complaint. We accept these allegations as true for purposes of this appeal. See *Hemi Group, LLC v. City of New York*, ___ U.S. ___, ___, 130 S. Ct. 983, 986-87 (2010).

Dorothy Davis, a widowed, elderly, African-American homeowner, lived in a single-family home in Kankakee, Illinois. In 1999, Larry Turner approached Mrs. Davis and recommended that she allow him to make repairs to her home and garage. Mrs. Davis told Turner that

she still owed money on the house and told him the terms of her mortgage. Turner offered to help her obtain a new home loan at a better rate than she was then paying. The loan that Turner was pushing on Mrs. Davis would also pay him $17,000 for the home repairs he said Mrs. Davis needed, and would consolidate some of Mrs. Davis's other outstanding debt. On September 23, 1999, Turner came to Mrs. Davis's home with Frank Saenz, an agent of Mortgage Express, the originating lender and not a party to this case. Mrs. Davis did not receive a Good Faith Estimate in connection with the Mortgage Express loan and did not receive a copy of the closing documents. She signed the loan documents that Turner and Saenz presented to her under pressure, without reading the documents and without understanding their terms. When the loan closed, Mrs. Davis had borrowed $87,550. Settlement charges totaled a whopping $32,916.10. Mrs. Davis's monthly payments under the loan terms would be $780.64, even though her monthly income amounted to only $1,100.

In 2001, Mrs. Davis brought suit against Mortgage Express (d/b/a PGNF Home Lending Corporation) for breach of contract, unjust enrichment, and violations of the Illinois Consumer Fraud and Deceptive Businesses Practices Act in Kankakee County, Illinois. Her case was presented to a jury on February 14, 2007, apparently in the absence of the named defendant. The jury rendered a verdict in favor of Mrs. Davis, finding that Mortgage Express had breached the mortgage loan contracts and had been wrongfully enriched. The court also found for Mrs. Davis on her fraud claim, and the court

entered a verdict of $136,500 against Mortgage Express. Mortgage Express went out of business in April 2007, and Mrs. Davis was unable to collect the judgment from Mortgage Express.

In the meantime, however, Mrs. Davis's loan had changed hands.[1] Mortgage Express assigned it to The Provident Bank on September 23, 1999. On June 24, 2002, The Provident Bank filed a foreclosure action against Mrs. Davis. Mrs. Davis answered and raised as an affirmative defense that Mortgage Express had violated the Illinois Consumer Fraud and Deceptive Business Practices Act. At some point, The Provident Bank assigned Mrs. Davis's loan to Wells Fargo, and Wells Fargo was substituted as the plaintiff in the foreclosure action against Mrs. Davis.[2]

Besides pursuing foreclosure, the defendants made other attempts to collect on Mrs. Davis's mortgage loan.

---

[1] The servicer of Mrs. Davis's loan also changed in this timeframe: her loan was serviced by PCFS Mortgage Resources until December 1, 2004, when current defendant Litton Loan Servicing took over.

[2] It is unclear when The Provident Bank's interest was assigned to Wells Fargo. A September 28, 2005 letter from Litton to Mrs. Davis, discussed above, said that the transfer occurred on September 1, 1999, but Mrs. Davis did not sign the mortgage with Mortgage Express until September 23, 1999. PGNF Home Lending, the successor-in-interest to Mortgage Express, asserted that The Provident Bank assigned the Mrs. Davis Loan to Wells Fargo on March 3, 2006. This factual inconsistency is immaterial and we need not resolve it.

On September 28, 2005, while both the foreclosure and fraud lawsuits were still pending, Mrs. Davis received a proposed loan modification agreement from Litton. The proposal was said to be based on the mortgage contract between Mrs. Davis and Wells Fargo "in its capacity as Trustee, under the Pooling and Servicing Agreement dated September 1, 1999, Home Equity Loan Asset Backed Certificates, Series 1993-3." After Mrs. Davis won her case against Mortgage Express, her counsel contacted Wells Fargo's attorney by phone and by mail to inform him of the verdict against Mortgage Express. The defendants continued their attempts to collect on the mortgage loan after the jury found the original loan was fraudulent. About five weeks after the verdict against Mortgage Express, Litton sent a loan payoff statement to Mrs. Davis demanding payment of $156,497.27. The payoff statement was based, in part, on the closing costs and settlement fees that had been found to be fraudulent in the February 2007 trial. Then, on April 27, 2007, Wells Fargo appeared in court to pursue the foreclosure action that was still pending against Mrs. Davis in Kankakee County, seeking damages in that case, again based in part on the fraudulent closing costs and settlement fees built into Davis's original mortgage contract with Mortgage Express.

Although not contained in Mrs. Davis's federal complaint, the record shows that on February 27, 2008, after a trial, the Kankakee County court dismissed Wells Fargo's foreclosure action against Mrs. Davis, finding that it had failed to prove its claim. This ruling was based in large part on the fact that the settlement

charges wrapped in the loan had been found to be fraudulent in Mrs. Davis's action against Mortgage Express.

A. *Unconscionability*

Mrs. Davis alleged that Wells Fargo's and Litton's actions were unconscionable under Illinois common law. Specifically, she contended that "the contractual loan, lease and written agreements Mrs. Davis signed . . . were transactions that no fair and honest lender would make and no reasonable borrower would accept," and that she signed the loan documents "without being able to read or to understand them, and no one read or explained the contents of the papers to her before she signed them. The contracts were one-sided, oppressive, unfair and unconscionable." Compl. ¶¶ 50-51. Because a claim of unconscionability under Illinois law requires a showing that either the formation of the contract or a contractual term was improper, and none of Mrs. Davis's allegations falling within the limitations period related to the formation of a contract, the district court dismissed Mrs. Davis's unconscionability claim.

Under Illinois law, a contract may be found to be unconscionable as a matter of law on either a "procedural" or "substantive" basis, or both. *Razor v. Hyundai Motor America*, 854 N.E.2d 607, 622 (Ill. 2006). Procedural unconscionability refers to a situation in which a term is so difficult to find, read, or understand that the party could not fairly be said to have been aware she was agreeing to it. Procedural unconscionability also takes

into account the party's relative lack of bargaining power. *Razor*, 854 N.E.2d at 622, citing *Frank's Maintenance & Engineering, Inc. v. C.A. Roberts Co.*, 408 N.E.2d 403, 410 (Ill. App. 1980). Substantive unconscionability, on the other hand, refers to contractual terms which are inordinately one-sided in one party's favor. *Razor*, 854 N.E.2d at 622, citing *Rosen v. SCIL, LLC*, 799 N.E.2d 488, 493 (Ill. App. 2003).

Mrs. Davis has not shown that the district court erred when it barred consideration of the formation of her mortgage contract in September 1999 on statute of limitations grounds. In this federal lawsuit, Mrs. Davis was not using the doctrine of unconscionability in its most familiar way, as an affirmative defense to bar enforcement of a contract or a particular term of a contract. See, *e.g.*, *Razor*, 854 N.E.2d at 622-24 (holding that exclusion of consequential damages in limited warranty was not enforceable because it was unconscionable). Mrs. Davis instead sought damages from the successors in interest to the original lender. We do not address here whether unconscionability gives rise to a stand-alone claim for damages under Illinois law, as Mrs. Davis asserts here. We do not address that issue because even if such a claim is cognizable in Illinois, it is clear that such a claim would be barred by the five-year statute of limitations.

To avoid the statute of limitations bar, Mrs. Davis contends that her claim of unconscionability should be extended to the defendants' later attempts to enforce the mortgage contract and should not be limited to the con-

tract's formation. In particular, Mrs. Davis relies on specific language in *Razor*, in which the Illinois Supreme Court stated that it was appropriate, in determining whether a contract or a contractual term was unconscionable, to take into account later events and to look beyond the facts and circumstances in existence at the time the contract was created. See *Razor*, 854 N.E.2d at 621 ("The unconscionability determination is not restricted to the facts and circumstances in existence at the time the contract was entered into . . . . Indeed, [ILCS 5/2-719(3)] itself expressly provides that matters which become known only subsequent to the drafting of the contract— *i.e.*, the type of injuries suffered as a result of breach—are relevant to the unconscionability calculus.") (internal citations omitted). But that provision (which applies to sales of goods) addresses only the facts and evidence that may come to bear on the underlying question of whether a contract or a particular contractual term was unconscionable under Illinois law. It does not change the underlying question itself.

That question remains whether a contract as a whole or a specific contractual provision is unconscionable. In Mrs. Davis's case, answering that question hinges on the formation of her mortgage contract with Mortgage Express and the terms of that contract. Mrs. Davis signed her mortgage contract in September 1999, outside the statute of limitations for any possible claim for damages for unconscionability. She has not alleged an actionable claim that is not barred by the statute of limitations. The district court properly dismissed Mrs. Davis's unconscionability claim.

B. *Fraud*

To prove fraud under Illinois law, a plaintiff must show that the defendant made a knowingly false representation of a material fact. The plaintiff must also show that she reasonably relied on the false representation to her detriment. See *Enterprise Recovery Systems, Inc. v. Salmeron*, 927 N.E.2d 852, 858 (Ill. App. 2010); citing *Phil Dressler & Associates, Inc. v. Old Oak Brook Investment Corp.*, 548 N.E.2d 1343, 1347 (Ill. 1989). Mrs. Davis's allegations of fraud are based on the following statements in her complaint:

> 54. . . . [D]efendants have fraudulently concealed from Mrs. Davis or have purposely misled her about the duplicative, padded and excessive settlement fees she would be charged and the monthly payments she would be required to pay, an[d] now is being compelled to pay through the foreclosure proceeding, for the mortgage loan.

> 55. Defendants further intentionally, knowingly and recklessly have misrepresented that they were offering Mrs. Davis a fair loan when the terms and conditions of the loan were set and agreed to at an artificially high rate which Mrs. Davis could never meet and are now demanding that she repay the loan and costs which have been found to be illegal.

> 56. Mrs. Davis was deceived by defendants, justifiably relied on their willful misrepresentations, and was induced to rely on them to her extreme detriment.

The district court limited its consideration of Mrs. Davis's fraud allegation to Wells Fargo's failure to

identify itself as the owner of her mortgage until January 18, 2007. The court found that although that omission could constitute a false statement under Illinois law, dismissal was appropriate because Mrs. Davis had failed to allege that she relied on that statement to her detriment.

On appeal, Mrs. Davis contends that the district court erred in not also considering the defendants' demands that she pay her loan, demands that continued even after the defendants knew that the Kankakee County court had ruled that her loan was based in part on Mortgage Express's fraud. We agree that overlooking this allegation was incorrect. Statements made to induce someone to pay a purported debt that they do not actually owe, if made with the requisite knowledge and intent, can support an allegation of fraud. See *Hartigan v. E & E Hauling, Inc.*, 607 N.E.2d 165, 175-77 (Ill. 1992) (allegations that contractor's letter sent to a metropolitan authority contained material misrepresentations as to contractor's compliance with minority business enterprise contract requirements, made for purpose of inducing authority's reliance in paying contract installment, supported allegation of common-law fraud). However, we agree with the district court that Davis's fraud claim still fails for a different reason. Even though Mrs. Davis alleged that the defendants attempted to induce her to pay money that they knew she did not owe, Mrs. Davis did not allege that she had relied on the defendants' demands for payment or that she had suffered any damages as a result of those demands. To the contrary, with the help of her attorney, she fought

those unjustified demands. Without reliance or damages, Mrs. Davis does not have a viable claim for fraud. We affirm the district court's dismissal of Mrs. Davis's fraud claim.

C. *The Home Ownership and Equity Protection Act*

The Home Ownership and Equity Protection Act requires lenders to make certain disclosures to borrowers of "high cost" or "high rate" loans. See 15 U.S.C. § 1639; *Cunningham v. Nationscredit Financial Services Corp.*, 497 F.3d 714, 717 (7th Cir. 2007). Mrs. Davis alleged that the defendants violated HOEPA by failing to disclose the real cost of her mortgage and the nature of the terms of her mortgage, including a description of the components and the material terms of her loan, the rate of interest, the period of the loan, the repayment schedule, any pre-payment provision, her right to cancel the loan, and other terms. She also alleged that the defendants failed to give her a copy of a Truth In Lending Act statement prior to, during, or soon after the loan closing. Compl. ¶¶ 59-61. Mrs. Davis's loan closed in 1999, well outside the statute of limitations for claims under HOEPA. Without resolving the threshold issue of whether or not Mrs. Davis's loan would have qualified for HOEPA protection if her claim had been timely, the district court dismissed her claim. We affirm.

Although she closed on her loan in 1999, Mrs. Davis argues that later events—specifically, Wells Fargo's and Litton's failure to notify her when they assumed their roles as holder and servicer of her mortgage, the

loan modification proposals Litton sent on behalf of Wells Fargo in January and September 2005, and Wells Fargo's inability to "adequately inform Mrs. Davis or the court of the actual terms of the loan" in the foreclosure proceeding—triggered protection under HOEPA, effectively extending the statute of limitations. Davis Br. 15-16. She relies on *Swanson v. Bank of America, N.A.*, 566 F. Supp. 2d 821 (N.D. Ill. 2008), *aff'd*, 559 F.3d 653 (7th Cir. 2009), a Truth In Lending Act case in which the plaintiff alleged that her credit card companies failed to provide written notices of interest rate increases. The district court in *Swanson* noted that the Truth In Lending Act requires credit card companies to notify consumers of changes to the initially-disclosed terms of credit under 12 C.F.R. § 226.9(c)(1), but dismissed Swanson's claim upon finding that the defendants had notified her in their initial disclosures that rate increases would be automatically triggered if she exceeded her credit limit, which she had done. See *Swanson*, 566 F. Supp. 2d at 825-27. Neither *Swanson*'s holding nor its commentary assists Mrs. Davis here. Mrs. Davis's loan was a closed-end mortgage, not an open-ended home-equity loan or revolving credit account. She has not alleged that the defendants failed to notify her of a change in her loan terms after she signed the closing documents or that there was any change in her loan's terms. The events that occurred within the statute of limitations do not amount to an actionable claim under HOEPA, and on this issue we also affirm the district court.

D. *The Equal Credit Opportunity Act*

The district court also dismissed Davis's ECOA claim under Rule 12(b)(6). The ECOA makes it illegal for creditors to "discriminate against any applicant, with respect to any aspect of a credit transaction . . . on the basis of race." 15 U.S.C. § 1691(a)(1). The statute defines "applicant" as "any person who applies to a creditor directly for an extension, renewal, or continuation of credit, or applies to a creditor indirectly by use of an existing credit plan for an amount exceeding a previously established credit limit." 15 U.S.C. § 1691a(b). To state a claim under the ECOA, Mrs. Davis had to allege that she was an "applicant" and that the defendants treated her less favorably because of her race. See *Moran Foods, Inc. v. Mid-Atlantic Market Development Co.*, 476 F.3d 436, 441 (7th Cir. 2007) (finding no need to resolve threshold issue of whether a plaintiff was an "applicant" under the ECOA because plaintiff failed to submit sufficient evidence of discrimination under the ECOA to survive summary judgment). Because Mrs. Davis did not allege that she applied for an extension, renewal, or a continuation of credit within the two-year statute of limitations for ECOA claims, the district court found that Mrs. Davis was not an "applicant" under the statute and granted the defendants' motion to dismiss. We respectfully disagree and find that dismissal of Mrs. Davis's ECOA claim on this ground was error, though the error turned out to be harmless.

Mrs. Davis relies on 12 C.F.R. § 202.2(e), which further defines "applicant" under the ECOA as "any person who requests or who has received an extension of credit

from a creditor, and includes any person who is or may become contractually liable regarding an extension of credit." She contends that the defendants' proposed loan modifications and demands or payment qualify her as an applicant under this definition. She also contends that the defendants' collection procedures and payment demands were "credit transactions" under 12 C.F.R. § 202.2(m), which defines such transactions broadly as "every aspect of an applicant's dealings with a creditor regarding an application for credit or an existing extension of credit (including but not limited to, information requirements; investigation procedures; standards of creditworthiness; terms of credit; furnishing of credit information; revocation, alteration, or termination of credit; and collection procedures)."

Mrs. Davis did not apply for credit from the defendants during the ECOA's statute of limitations, nor was there a change to the terms of her existing loan. However, Mrs. Davis alleged that on September 28, 2005, the defendants offered to modify the terms of her loan, and that the terms under which that offer was made were racially discriminatory. In light of the broad regulatory definitions, we find that Mrs. Davis, as the recipient of the defendants' offer to modify her loan, "received an extension of credit" and thus became an "applicant" under 12 C.F.R. § 202.2(e). See also 12 C.F.R. § 202.2(q) (defining "extend credit and extension of credit" to include "the refinancing or other renewal of credit.").

Remand of Mrs. Davis's ECOA claim, however, would be fruitless. Identical allegations of racial discrimination

supported Mrs. Davis's ECOA claim and her FHA claim. The FHA claim survived the defendants' motion to dismiss but was the target of their motion for summary judgment. As we detail below, when Mrs. Davis was required to come forward with evidence showing race discrimination, she failed to do so. Mrs. Davis's ECOA claim would suffer the same fate. We affirm the judgment of the district court on this claim.

III. *Summary Judgment*

Only one of Mrs. Davis's claims survived the defendants' motion to dismiss—racial discrimination in violation of the FHA. The parties each moved for summary judgment on that claim. The district court denied Mrs. Davis's motion and granted the defendants' motion. We review the district court's decision de novo. Summary judgment is appropriate when there are no genuine issues of material fact, entitling the moving party to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Where the non-moving party bears the burden of proof on an issue at trial and the motion challenges that issue, the non-moving party must set forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(e)(2); *Silk v. City of Chicago*, 194 F.3d 788, 798 (7th Cir. 1999). The fact that both parties moved for summary judgment does not change the standard of review.

The FHA makes it unlawful to "discriminate against any person in the terms, conditions, or privileges of sale

or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(b).[3] Mrs. Davis's complaint alleged that the defendants had discriminated against her by "contracting . . . for the origination and servicing of [her] mortgage loans which contained terms and conditions less favorable than in mortgage loans they contracted with similarly-situated, non-minority borrowers," Compl. ¶ 65, and that they "discriminated against [her] by imposing unfair credit terms, fees and expenses . . . on the basis of her race." Compl. ¶ 72. Like the district court before us, we limit our review of Mrs. Davis's claim to those events that occurred within the two-year statute of limitations for FHA claims—specifically Litton's loan modification proposal and the defendants' attempts to collect on Mrs. Davis's loan. Allegations are one thing, but to withstand the defendants' motion for summary judgment, Mrs. Davis had to come forward with evidence to show that the defendants' conduct has a racially-based disparate impact on borrowers, or with direct and/or circumstantial evidence sufficient to demonstrate defen-

---

[3] Another provision of the FHA, 42 U.S.C. § 3605(a), makes it "unlawful for any person or other entity whose business includes engaging in residential real estate-related transactions to discriminate against any person in making available such a transaction, or in the terms or conditions of such a transaction, because of race . . . ." Mrs. Davis abandoned any claim under § 3605 before the district court. See *Davis v. Wells Fargo Bank*, 685 F. Supp. 2d 838, 844 (N.D. Ill. 2010).

dants' discriminatory intent. See *Bloch v Frischholz*, 587 F.3d 771, 784 (7th Cir. 2009); *Latimore v. Citibank Federal Savings Bank*, 151 F.3d 712, 715-16 (7th Cir. 1998). Without evidence of a triable issue of fact, Davis's FHA race discrimination claim cannot survive summary judgment— an analysis that extends to Mrs. Davis's ECOA race discrimination claim, as well.

At the summary judgment stage of her case, Mrs. Davis primarily relied on four "affidavits." Two of those supposed affidavits were purportedly the written statements of Geoffrey Smith, an associate of the Woodstock Institute, and Nick Bianchi, a research analyst for the National Training and Information Center.[4] However,

---

[4]  If the Smith and Bianchi statements had been admissible, they would have provided the following information. The Smith statement described a report completed by the Woodstock Institute entitled "Paying More for the American Dream: A Multi-State Analysis of Higher Cost Home Purchase Lending." Smith Decl. ¶¶ 3-6. Mrs. Davis submitted a copy of "Paying More for the American Dream" as an exhibit separate from the Smith statement. And, according to the Bianchi statement, the National Training and Information Center coordinated "National People's Action," and National People's Action published a report entitled "The Truth About Wells Fargo: Racial Disparities in Lending Practices." The report examined the residential mortgage lending performance of Wells Fargo and its affiliate companies. Bianchi Decl. ¶¶ 2-3. Mrs. Davis submitted a copy of "The Truth About Wells Fargo" also as a separate exhibit from the Bianchi statement. These documents do not sufficiently link reported wrongdoing by Wells Fargo

(continued...)

the Smith and Bianchi statements were not signed or dated. The district court granted the defendants' motion to strike these documents because they failed to comply with the requirements of Rule 56(e) and 28 U.S.C. § 1746.[5]

Mrs. Davis also presented the declarations of Tony Paschal and Elizabeth Jacobson. Paschal and Jacobson were former Wells Fargo employees who worked in Virginia and Maryland, respectively. Their declarations were originally prepared in April 2009 for a lawsuit pending in the United States District Court for the District of Maryland. Although Paschal's and Jacobson's declarations were signed, dated, and in compliance with 28 U.S.C. § 1746, neither Paschal nor Jacobson attested to having any personal knowledge of Mrs. Davis's loan or its surrounding circumstances. The defendants moved to strike these exhibits from the summary judgment record because Mrs. Davis had not disclosed Paschal or Jacobson

---

[4] (...continued)

in other circumstances to the claims of plaintiff in this case so as to support an inference of race discrimination by these defendants within the relevant time period.

[5] Mrs. Davis's response to the defendants' motion to strike claimed that she had provided the court with the original Smith and Bianchi declarations, complete with verified signatures, but contrary to Mrs. Davis's assertion, the verified documents were not attached. Courtesy copies of the declarations provided to the court, file-stamped December 30, 2009, were also not signed, dated, or notarized. See *Davis*, 685 F. Supp. 2d at 841-42.

as a witness as required by the discovery rules. See, *e.g.*, Fed. R. Civ. P. 26(a), (e). Finding that Mrs. Davis's failure to disclose Paschal and Jacobson was neither substantially justified nor harmless under Rule 37(c)(1), the court granted the defendants' motion to strike and excluded the Paschal and Jacobson statements.

Mrs. Davis moved the court to reconsider its exclusion of the Smith, Bianchi, Jacobson and Paschal statements. Her motion was denied. Without the statements, the only admissible evidence before the court on Mrs. Davis's behalf was her own testimony that she believed that, if she had not been "an old, black lady," the defendants would have paid the judgment rendered by the Kankakee County court against Mortgage Express. The district court found that Mrs. Davis's unsubstantiated and speculative assertion was insufficient to raise a disputed issue of material fact. Without evidence of racial discrimination, it was appropriate to grant defendants' summary judgment motion. See *Davis*, 685 F. Supp. 2d at 846-47.

On appeal, Mrs. Davis attempts to rely on the excluded Smith, Bianchi, Paschal and Jacobson statements, but she does not offer any meaningful argument that the district court's decision to grant the defendants' motion to strike those statements was an abuse of discretion, and thus has waived any such arguments on appeal. See *United States v. Holm*, 326 F.3d 872, 877 (7th Cir. 2003) ("'It is not the obligation of this court to research and construct legal arguments open to parties, especially when they are represented by counsel.'"),

quoting *Beard v. Whitley County REMC*, 840 F.2d 405, 408-09 (7th Cir. 1988). We find, as the district court did, that Mrs. Davis's unsubstantiated belief that she was mistreated by the defendants because she was black was insufficient to support her discrimination claims. Accordingly, the trial court's disposition of Mrs. Davis's FHA claim on the parties' cross-motions for summary judgment was proper. Mrs. Davis's ECOA claim rests on the same allegations as did her FHA claim. When required to do so, Mrs. Davis failed to bring forth any admissible evidence of racial discrimination. The correct disposition of her FHA claim also applies to her claim that she was discriminated against under the ECOA.

AFFIRMED.