NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted November 6, 2015[*]
Decided November 9, 2015

**Before**

WILLIAM J. BAUER, *Circuit Judge*

JOEL M. FLAUM, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 15-1082

| | |
|---|---|
| JONATHAN D. WILKE, *Plaintiff-Appellant*, | Appeal from the United States District Court for the Eastern District of Wisconsin. |
| *v.* | No. 12-CV-1231-JPS |
| CHARLES E. COLE, et al., *Defendants-Appellees*. | J.P. Stadtmueller, *Judge*. |

### O R D E R

Jonathan Wilke, a former Wisconsin inmate now in federal custody, contends that the defendants, all of them employed by the Department of Corrections, did not respond appropriately to his paruresis, a type of social phobia that makes it difficult to urinate in the presence of others. *See* American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 300.23 (5th ed. 2013). Wilke characterized his paruresis as both a serious medical need and a disability. The defendants, he claimed, had been deliberately indifferent to the condition in violation of the Eighth Amendment, and also

---

[*] After examining the briefs and record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and record. *See* FED. R. APP. P. 34(a)(2)(C).

had failed to accommodate his phobia in violation of the Americans with Disabilities Act, *see* 42 U.S.C. § 12132. The district court dismissed the Eighth Amendment claim at screening, *see* 28 U.S.C. § 1915A, and granted summary judgment for the defendants on the ADA claim. Wilke challenges both rulings. We affirm the judgment.

Except as noted the pertinent facts are not disputed. Wilke was at Kettle Moraine Correctional Institution in early March 2011 when he first complained to a nurse about having a "shy bladder," another name for paruresis. Wilke explained that he was having difficulty urinating in the presence of staff when asked to produce a sample for urinalysis. The nurse agreed with Wilke that his symptoms were consistent with paruresis, and she recommended various mental exercises. She added, though, that there was not any known treatment.

From March 25 to April 16, 2011, Wilke was confined in segregation, but during that period he did not report any problems attributable to his paruresis. In May 2011, however, he contacted William McCreedy, the manager of the Health Services Unit, asking that his paruresis be accommodated when collecting urine samples. McCreedy refused with the explanation that Wilke had not been diagnosed with paruresis and that in the past he had been able to provide samples without accommodation.

In December 2011, Wilke visited the Psychological Services Unit at Kettle Moraine and asked about treatment for paruresis and an accommodation for urine testing. Michelle Wilinski, a psychological associate, promptly added Wilke's name to the list of inmates needing accommodation (i.e., being left alone in an empty cell to produce the sample). In taking that step, Wilinski was following her unit's policy of automatically granting a urinalysis accommodation to any inmate who self-reports paruresis. The parties agree that adding a name to the accommodation list is not intended as a "diagnosis," but instead is done to protect inmates who might have paruresis from being disciplined for not providing a urine sample. Even so, Wilinski noted in the plaintiff's medical file that he had made a self-report of paruresis, and she also entered an initial "diagnosis," pending further investigation, of "social phobia." Not long after this interaction with Wilinski, the plaintiff was asked to produce a urine sample without accommodation. He complied, but the effort was painful. Afterward, Wilinski clarified that inmates on the accommodation list must still try each time to produce a sample without accommodation. In practice, though, Wilke may have been taken immediately to a vacant cell whenever urine was collected (at summary judgment he gave inconsistent accounts about whether prison staff required him to first try giving the sample without accommodation).

A few weeks after Wilke first contacted psychological services, the Security Director, Dylan Radtke, and the Chief Supervising Psychologist, Toby Watson, met with him to discuss his paruresis. Dr. Watson provided information about the services available for further assessment and possible treatment, and also noted that avoidance is not an effective strategy for addressing the phobia. He instructed Wilke to contact Wilinski, who then met twice with Wilke, in January and February 2012. She gave him a pamphlet describing coping techniques, which she discussed with him.

Shortly after the February meeting with Wilinski, Wilke was placed in segregation, where he shared a cell. Over the next few days, Wilke repeatedly asked the supervisor of the segregation unit, as well as the medical- and psychological-services staff, to assign him to a single cell because his paruresis was making it difficult to urinate in front of his cellmate. This was the first time, Wilke concedes, that he asked to be housed alone while in segregation. His requests were denied, and in one response, another psychological associate, Randy Smith, urged him to use the coping techniques discussed with Wilinski. Smith explained that, as noted in the pamphlet Wilinski had provided, avoidance of the problem is not an effective treatment. Dr. Watson also responded to Wilke's requests, saying that, after consulting with Radtke, he had decided against giving Wilke a cell to himself.

In March and September 2012, during two more periods in segregation, Wilke again contacted psychological services and requested a single cell as an accommodation to his paruresis. Once again Smith, the psychological associate, and Dr. Watson followed up with Wilke, though they did not authorize a single cell. In a letter responding to the plaintiff's September request, Watson reminded him about a handout on paruresis, which Smith had sent Wilke so that they could begin working on a treatment plan. Watson noted that Wilke had not met regularly with the psychological-services staff after his last stint in segregation, and the psychologist encouraged Wilke to contact Smith to begin working with him.

Wilke was released from segregation on November 17, 2012, and a few days later requested an appointment with psychological services. On December 4, 2012, he filed this lawsuit. Another psychological associate, Joshua Dolan, met with him later that month and also in January 2013. They discussed his symptoms and coping techniques. After that, however, Wilke did not return, and so Dolan wrote him in April 2013. Dolan noted that Wilke had not been by in three months and encouraged him to submit a request if he still needed assistance.

In May 2013, Wilke engaged for the first time Kettle Moraine's process for requesting reasonable accommodations under ADA. He asked that he be given a single cell when sent to segregation. The prison's "accommodations coordinator" denied that request in June 2013, writing that she had not found confirmation of a paruresis diagnosis but noting that, even assuming that Wilke suffers from that condition, a "single cell would be contraindicated." The coordinator suggested that Wilke continue working with health services or psychological services to obtain a recommendation for this particular accommodation.

After extensive discovery, both sides moved for summary judgment. Wilke argued that he has a disability for purposes of the ADA (paruresis impairs the functioning of his bladder, a major life activity, *see* 42 U.S.C. § 12102), and he also contended that the defendants had failed to reasonably accommodate him during urinalysis and while he was in segregation. The defendants disputed that paruresis is a disability under the ADA and denied that any qualified medical professional had officially diagnosed Wilke with that condition. In September 2014 the district judge denied both motions, explaining that neither side had persuaded him that issues of material fact did not exist concerning whether Wilke was a qualified individual with a disability and whether he had been denied reasonable accommodations.

Meanwhile, Wilke had completed his state sentence in May 2014, and immediately had been taken into federal custody to begin serving a federal sentence. When the defendants realized that he no longer was in their custody, they obtained leave to file a renewed motion for summary judgment. This time the defendants argued that Wilke's demand for injunctive relief was now moot and that, because he was left with only a damages action under Title II of the ADA, the suit must be dismissed on the basis of Eleventh Amendment immunity. The defendants submitted another statement of undisputed facts, which included their assertion, citing an affidavit from Smith, the psychological associate, that "providing a single cell accommodation to someone with paruresis in most instances would make their paruresis condition worse because avoidance intensifies the anxiety sufferers experience from being around others while urinating." Not only did Wilke fail to object to this statement, he concurred. The district court agreed with the defendants' new arguments and, in December 2014, granted summary judgment in their favor.

On appeal Wilke first argues that the district court erred in dismissing his Eighth Amendment claim at screening. The district court reasoned that Wilke's complaint fails to state a claim for deliberate indifference to a serious medical need because paruresis is

not a condition that would be obvious to a lay person and no physician ever had diagnosed the condition officially. Moreover, the court continued, Wilke's complaint alleges that he was receiving care from the prison's medical staff, and thus he was not denied care.

We are skeptical of the district court's conclusion that Wilke did not allege that he suffers from paruresis, simply because an "official" diagnosis was never made. Putting the complaint to one side, it is clear from the substantial record that the defendants all along understood Wilke to have paruresis, and that many of the defendants likewise understood the nature of that phobia. In a different case, then, we might find it necessary to decide if, or under what circumstances, paruresis constitutes a serious medical need. *Compare Roundtree v. Walton*, Civil No. 12-cv-1166-JPG, 2013 WL 1840377 (S.D. Ill. May 1, 2013) (concluding that paruresis was serious medical need when condition allegedly caused inmate's suicide attempt), *and Hunt v. Houston*, No. 4:11CV3086, 2011 WL 3897602 (D. Neb. Sept. 6, 2011) (stating that paruresis was serious medical need because it triggered post-traumatic stress disorder and hypertension), *with Brammer v. Northrop*, No. 06-CV-6520 CJS, 2010 WL 681296 (W.D. N.Y. Feb. 24, 2010) (stating that inmate's paruresis was not "objectively sufficiently serious" because it arose only during urinalysis).

For purposes here we may assume that paruresis can be a serious medical need. That assumption cannot help Wilke, though, because he's already had a full opportunity to develop evidence supporting his Eighth Amendment claim, and that evidence shows the claim to be without merit. In reviewing Wilke's complaint, the district court reasoned that it actually details adequate treatment, not indifference. Essentially, the court thought that Wilke had pleaded himself out of court. *See Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011) (explaining that plaintiff can "plead himself out of court" by alleging "facts that show that he has no legal claim"). Whether or not we would agree with that reading of the complaint, we need not blind ourselves to the record developed during discovery.

That record confirms that the defendants did not ignore Wilke's paruresis. After self-reporting the condition he was given literature about it and taught strategies for coping. He also received counseling from the psychological-services staff, including two psychological associates and the chief supervising psychologist. Wilke was encouraged to meet regularly with the counselors and participate in formulating a treatment plan, but he did not. Instead, he simply demanded a private cell when housed in segregation, even though, as he conceded at summary judgment, that very "accommodation"

typically would aggravate paruresis because "avoidance intensifies the anxiety" experienced when urinating around others. Wilke may have changed his mind about this concession, but his disagreement with the psychological-services staff about how best to treat his phobia cannot sustain a claim for deliberate indifference. *See Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996). The same allegations and evidence underlie both of Wilke's claims, and, with the benefit of the record developed at summary judgment on the surviving ADA claim, we are confident that a jury could not reasonably find for Wilke on the Eighth Amendment claim. For that reason Wilke could not have been harmed by the dismissal of the claim at screening, even if that dismissal was too hasty. *See United States v. Rogers Cartage Co.*, 794 F.3d 854, 861 (7th Cir. 2015); *Estate of Davis v. Wells Fargo Bank*, 633 F.3d 529, 538 (7th Cir. 2011).

Next, Wilke argues that the district court erred when it granted summary judgment in favor of the defendants on his ADA claim. The parties debate whether the district court properly determined that the defendants are immune from suit despite the attempted statutory abrogation of sovereign immunity in Title II of the ADA. The defendants also argue that it was unnecessary to reach this issue because Wilke's request for injunctive relief was mooted by his transfer from federal custody, and Wilke did not argue that he was subject to intentional discrimination, which they contend is required to obtain compensatory damages under Title II.

The defendants are correct, and Wilke concedes, that he can no longer seek injunctive relief because he was transferred from state custody, *see Pearson v. Welborn*, 471 F.3d 732, 743 (7th Cir. 2006), and he is therefore limited to seeking compensatory damages. The defendants state that intentional discrimination is thus required, though we have never published an opinion explicitly taking this position. But we have observed that all circuits to address the question have reached this conclusion, s*ee CTL ex rel. Trebatoski v. Ashland Sch. Dist.*, 743 F.3d 524, 528 n.4 (7th Cir. 2014), and we noted that compensatory damages "may be available only for claims of intentional discrimination." *Reed v. Columbia St. Mary's Hosp.*, 782 F.3d 331 (7th Cir. 2015). Nevertheless, the circuits are split regarding whether discriminatory animus or only deliberate indifference is required, *see S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 262–63 (3d Cir. 2013) (describing different circuits' standards). We need not take a position here because the facts Wilke alleges, at worst, demonstrate negligence, which cannot meet either standard. The defendants were not deliberately indifferent to his condition when they chose not to grant him a single cell, which they judged—and Wilke admitted—would likely make his disorder worse. And the record reflects that

Wilke failed to seek the treatment that psychological services advised and which would enable staff to ascertain whether his requested accommodation was in fact necessary.

AFFIRMED.