**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted September 22, 2016[*]
Decided September 22, 2016

**Before**

MICHAEL S. KANNE, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 15-3276

| | |
|---|---|
| JOSE CARLOS ARCE, *Plaintiff-Appellant*, | Appeal from the United States District Court for the Southern District of Indiana, Indianapolis Division. |
| *v.* | No. 1:13-cv-01777-WTL-MJD |
| JENNIFER BARNES, et al., *Defendants-Appellees*. | William T. Lawrence, *Judge*. |

**O R D E R**

Jose Arce, a former Indiana inmate who suffers from back pain, appeals the grant of summary judgment against him in this suit under 42 U.S.C. § 1983, asserting an Eighth Amendment claim of deliberate indifference, a First Amendment retaliation claim, and a state-law negligence claim. We affirm.

---

[*] We have unanimously agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. *See* FED. R. APP. P. 34(a)(2)(C).

Arce's claims arise from the time he was incarcerated at Plainfield Correctional Facility. He alleged that the defendants—Nurse Jennifer Barnes, a nurse practitioner at the facility employed by Corizon, LLC; Dr. Michael Mitcheff, Corizon's regional medical director; and Corizon—failed to treat his severe back pain that was caused by a prior injury. As he described the events in his complaint, his back pain flared up after his "orthopedic mattress" at the facility was inexplicably removed. He received medication for the pain, but it was ineffective, and his complaints to Nurse Barnes about its ineffectiveness were ignored. Arce said that he wrote to Plainfield's then-superintendent, Brian Smith, complaining about Barnes's refusal to treat him and asking for help to obtain appropriate treatment, but Smith never responded. Later, Arce convinced a prison doctor to order a thick mattress to treat his back pain, but that order was overruled by Dr. Mitcheff. Next, after he filed this suit, unnamed prison personnel retaliated against him by, among other things, confiscating a pillow he had been using for additional back support.

Smith moved to dismiss Arce's claims against him on grounds that he was neither deliberately indifferent nor personally involved in Arce's treatment. The district court agreed and dismissed any claims against Smith for failure to state a claim.

Discovery on the remaining claims ensued, and at summary judgment the following facts, presented in a light most favorable to Arce, were presented. In April 2013, Arce aggravated his back after his "orthopedic mattress" was replaced with a standard one during his temporary absence from Plainfield. At his request, a prison doctor ordered him a "thick medical mattress for back pain," but Dr. Mitcheff disagreed that the mattress was medically necessary and cancelled the order. Dr. Mitcheff later stated that he did not remember reviewing that order in particular but that he would have reviewed the medical records, which showed that Arce "was completely ambulatory, able to exercise, had full range of motion, and had no visible indication of any adverse physical effects from his reported back pain."

After the order was cancelled, Nurse Barnes handled the treatment of Arce's back pain. Arce told her at an appointment in mid-June that his prescribed anti-inflammatory medication, Naproxen, was not helping. Barnes agreed to have him try another anti-inflammatory medication, Mobic, but a month later Arce complained that the Mobic also was ineffective. In mid-August, Barnes authorized physical-therapy appointments to treat Arce's ongoing back pain, and his sessions over the next couple months reduced his pain.

Two months after Arce filed this suit, unknown personnel confiscated an "unauthorized" extra pillow. Arce complained about this confiscation at a medical appointment and through two health care requests. Medical staff initially denied his requests for a pillow but a few months later eventually ordered one.

The district court granted summary judgment for the defendants. Regarding Arce's claim against Dr. Mitcheff, the court said, a jury could infer from the evidence only that he disagreed with the prison doctor about the course of proper treatment for Arce's condition, and this was insufficient to show deliberate indifference. As for the claim against Nurse Barnes, the court concluded that no jury could find that she exhibited deliberate indifference after she responded to Arce's report of Naproxen's ineffectiveness by changing his medication and, when that proved ineffective, arranged for physical therapy. As for the retaliation claim, the court observed that there was no evidence suggesting that either Barnes or Dr. Mitcheff was personally involved in any retaliatory actions. Finally, the court rejected Arce's state-law claims of medical negligence because he failed to present them first to a medical review panel, as required under Indiana law.

The court later denied Arce's post-judgment motion to reconsider, adding with regard to his state-law negligence claims that he had not presented sufficient expert testimony to establish that the defendants' treatment fell below the standard of care.

On appeal Arce first contests the grant of summary judgment for Nurse Barnes, arguing that he presented evidence that Barnes knew that he was in great pain yet delayed prescribing effective treatment in the form of physical therapy, and instead persisted with a course of treatment that she knew would be ineffective.

But he produced no evidence of this, as the district court properly concluded. It is undisputed that Nurse Barnes altered her course of treatment each time that Arce reported that his medications were ineffective, and although Arce would have preferred to be prescribed physical therapy immediately—rather than upon the completion of a course of Mobic—there is no evidence that Barnes knew that Mobic would be ineffective or that the decision to start with that medication was one that "no minimally competent professional" would have made. *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) (quoting *Sain v. Wood*, 512 F.3d 886, 894–95 (7th Cir. 2008)); *see also Petties v. Carter*, No. 14–2674, 2016 WL 4631679, at *4–5 (7th Cir. August 25, 2016) (en banc). In fact, a declaration from Arce's doctor in Mexico notes that he recommended, among other treatments, anti-inflammatory medication—namely, the Naproxen that Arce received initially—as well as physical therapy. Arce does not point to any evidence suggesting

that Barnes unreasonably delayed ordering physical therapy once she knew that Mobic was not providing relief. Barnes testified that it is not uncommon to allow 30 to 60 days to determine whether a new medication is effective, and Arce has not presented any evidence to dispute this.

Arce also maintains that the district court erred in granting summary judgment for Dr. Mitcheff because, he contends, a jury could infer that the decision to override the prison doctor's order for a thick mattress was a deliberate decision to deny access to treatment that was medically necessary. He argues that his medical records showed that he was in great pain and that a jury could infer that Dr. Mitcheff, having reviewed those records, knew that the mattress was necessary yet nonetheless disregarded his pain.

The district court properly concluded that Arce did not present sufficient evidence to create a fact question about Dr. Mitcheff's treatment of his back condition. He did not, for instance, introduce evidence of the doctor's mental state—evidence to suggest that the denial of a particular mattress was "such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that [Dr. Mitcheff] did not base the decision on such a judgment," *Petties*, 2016 WL 4631679, at *4 (quoting *Estate of Cole v. Fromm*, 94 F.3d 254, 262 (7th Cir. 1996)). As Dr. Mitcheff pointed out, Arce's medical records contained little evidence of physical limitations from pain. Although the thick mattress recommended by the prison doctor suggests that he viewed the mattress as necessary, the record does not reflect details about the basis for this judgment, and a "[d]isagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation." *Pyles*, 771 F.3d at 409.

Next Arce argues that the district court erred in granting summary judgment on his retaliation claim because the court misconstrued his claim as one arising under § 1983 and the First Amendment rather than as a "retaliation claim under Indiana state law." He says that this construction prevented him from asserting a theory of vicarious liability against Corizon. But the district court did not misconstrue Arce's claim. His complaint may not have mentioned the First Amendment, but it did allege that "filing the instant lawsuit … is a legally protected activity," that "he suffered a deprivation … likely to prevent future protected activities," and that "there is a causal connection between the two." And Arce did not create a fact question regarding retaliation. It was undisputed that Nurse Barnes and Dr. Mitcheff were uninvolved in the actions that he

contends were retaliatory, and Arce never identified anyone who he thought was responsible or who had carried out actions directed by Barnes or Dr. Mitcheff.

Arce also challenges the grant of summary judgment for the defendants on his state-law negligence claims. Arce contends that it was error to reject these claims on the ground that they had not been presented to a medical review panel, *see* IND. CODE § 34-18-8-4, because that requirement, established under the Indiana Medical Malpractice Act, applies only to suits against qualified health care providers, *see id.* § 34-18-3-1, and the defendants did not submit any evidence that they so qualified. *Id.* § 34-18-3-2 (setting forth requirements under the Act).

But even if we assume that the Medical Malpractice Act does not apply, Arce still needed to "present expert testimony to establish the applicable standard of care and to show whether the defendant's conduct falls below the standard of care," *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 760 (7th Cir. 2004), and the only expert testimony he obtained—that of his doctor in Mexico—was too generalized. It did not address the specific treatment that Arce received in prison, let alone whether it fell below the standard of care.

Finally Arce challenges the district court's conclusion that he failed to state a claim of deliberate indifference against then-superintendent Smith for allegedly having ignored his letter complaining about his treatment from Nurse Barnes. He maintains that he sufficiently stated a constitutional claim by alleging that Smith knew from his letter that he was being mistreated by Barnes, yet turned a blind eye to her misconduct.

The district court was too hasty in dismissing this claim. "An inmate's correspondence to a prison administrator may … establish a basis for personal liability under § 1983 where that correspondence provides sufficient knowledge of a constitutional deprivation." *Perez v. Fenoglio*, 792 F.3d 768, 781–82 (7th Cir. 2015). In Arce's correspondence to Smith—which he appended to his initial complaint and invoked in his operative complaint—he wrote that Barnes thought he was "faking" his back pain and that he had not received "any treatment that has relieved my pain." These statements, if true, would suggest that Smith had "a reason to believe (or actual knowledge) that prison doctors or their assistants [were] mistreating (or not treating)" Arce. *King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012) (quoting *Hayes v. Snyder*, 546 F.3d 516, 527 (7th Cir. 2008)).

Remand of Arce's claim against Smith, however, would be fruitless. As we've explained, identical allegations of deliberate indifference against Barnes failed at

summary judgment, when Arce was required to come forward with supporting evidence and could not do so. *See Estate of Davis v. Wells Fargo Bank*, 633 F.3d 529, 538 (7th Cir. 2011) (district court's error in dismissing claim at pleading stage was harmless when other claims dismissed on summary judgment rested on identical allegations). Arce's claim against Smith would suffer the same fate.

AFFIRMED.