In the

# United States Court of Appeals
## For the Seventh Circuit

—————————

No. 18-1710

MARIO L. SIMS and
TIFFINY SIMS,

*Plaintiffs-Appellants*,

*v.*

NEW PENN FINANCIAL LLC, under its assumed name doing
business as SHELLPOINT MORTGAGE SERVICING,

*Defendant-Appellee*.

—————————

Appeal from the United States District Court for the
Northern District of Indiana, South Bend Division.
No. 3:15-cv-00263-MGG — **Michael G. Gotsch, Sr.**, *Magistrate Judge*.

—————————

ARGUED OCTOBER 2, 2018 — DECIDED OCTOBER 18, 2018

—————————

Before BAUER, KANNE, and SCUDDER, *Circuit Judges*.

PER CURIAM. Mario and Tiffiny Sims, an African-American
couple, purchased a house in South Bend, Indiana, that they
later discovered was subject to a mortgage that the seller had
stopped paying. Ever since, they have tried to assume that
loan to avoid a foreclosure sale. They sued the loan servicer,
Shellpoint, under the Equal Credit Opportunity Act, 15 U.S.C.

§§ 1691–91f, alleging that Shellpoint discriminated against them based on race when it prohibited them from assuming the loan. The district judge concluded that the Simses did not produce enough evidence of discriminatory intent and entered summary judgment for Shellpoint. Because the Simses' evidence of racial discrimination is too speculative to establish a dispute of material fact, we affirm.

## I. Background

The Simses purchased a house from John Tiffany in October 2008 for $185,000. The Simses made a down payment ($12,000) and monthly payments ($1,400) to Tiffany for about a year. To their surprise, Bank of New York Mellon notified them in December 2009 that it was foreclosing on the property. (Tiffany had stopped making mortgage payments the prior May and still owed $126,000.)

To avoid a foreclosure sale and maintain possession of the house, the Simses then launched what became an extended effort to assume Tiffany's debt and mortgage. The Simses first offered to assume the debt when they wrote to the then-loan servicer, Resurgent, in January 2010. Tiffany followed up months later, writing to Resurgent that he was "willing to work toward a resolution in which Mr. and Mrs. Sims take over his obligation with the bank" and asking what was needed to "move this matter forward." (Under Tiffany's mortgage agreement, any purchasers of the property may assume the loan, so long as the loan servicer receives information to evaluate them "as if a new loan were being made" and determines that the assumption would not impair its security.) Over the next four years, the Simses maintain, they tried to assume Tiffany's mortgage, but Resurgent never advised them of what information it needed to evaluate their

application. Meanwhile, in 2012 the Simses acquired a quitclaim deed for the property from Tiffany, and in 2013 Bank of New York Mellon foreclosed on the house, which then was scheduled for a foreclosure sale.

Shellpoint, which began servicing the loan in March 2014, informed the Simses nine months later of what information they needed to provide in order to apply to assume the loan. To give the Simses an opportunity to submit the requisite documentation, Shellpoint agreed to postpone a foreclosure sale.

Over the next several months, the Simses tried to apply for the loan without success. They maintain that they thrice sent the required financial records to Shellpoint. According to an affidavit prepared by one of Shellpoint's representatives, however, the Simses never submitted an application that Shellpoint deemed complete enough to warrant review. Shellpoint also informed the Simses in March 2015 that they needed to bring Tiffany's loan current before they could assume it. This requirement proved to be a sticking point: without Tiffany's written consent to discuss the status of his loan with a third party (here, the Simses), Shellpoint refused to disclose information about his missed payments, and the Simses assert that they could not bring his loan current without knowing how much it would cost them to do so.

The Simses, based on a conversation with a Shellpoint employee, believe that Shellpoint has not permitted them to assume Tiffany's loan because they are African-American. They assert that Shellpoint frequently rebuffed their inquiries to Shellpoint about their application's status. Shellpoint personnel, they insist, sometimes hung up on them or sent their calls to voicemail and did not call back. They eventually

got through to a Shellpoint employee, K'tia Cox, who the Simses believe is African-American and who allegedly told them, "These people, you know how they treat us."

After several attempts to assume the loan without success, the Simses filed this suit. Seeking damages and an injunction preventing a foreclosure sale of the house, they sued Shellpoint under the Equal Credit Opportunity Act, the Fair Housing Act, the Fair Debt Collection Practices Act, and Indiana state law. As relevant here, they alleged that Shellpoint discriminated against them based on race by delaying their effort to assume Tiffany's loan and forcing them to make all of Tiffany's overdue payments as a condition of assumption—a condition that, they say, Tiffany's mortgage agreement does not require.

In response to Shellpoint's motion to dismiss the complaint, the district court dismissed many claims but allowed the Simses to proceed on their claim under the Equal Credit Opportunity Act. The Act makes it "unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction, on the basis of race… ." 15 U.S.C. § 1691(a)(1).

After discovery, a magistrate judge, presiding by consent, 28 U.S.C. § 636(c), entered summary judgment for the defendant. The judge first determined that the Simses "probably were not 'applicants'" under the Act because they were seeking to assume a line of credit, rather than to "exten[d], renew[], or continu[e]" one. *See* 15 U.S.C. § 1691a(b). But even if the Act applied, the judge continued, the Simses failed to present evidence of discrimination under either a disparate impact or disparate treatment theory. Cox's statement ("These people, you know how they treat us"), the

judge assessed, was ambiguous and lacked foundation, and thus it was insufficient to show race discrimination. In the end, the "dearth of evidence from the Simses" precluded them from calling into question Shellpoint's conduct or conclusion that they did not complete the prerequisites for assuming the loan.

## II. Analysis

On appeal, the Simses argue that they presented enough evidence to withstand summary judgment. They advance a disparate treatment theory and assert that Cox's uncontroverted statement shows that Shellpoint discriminated against them based on race by delaying the assumption process and requiring them to bring the loan current before assuming it.

The district court correctly entered summary judgment for the defendants because no reasonable jury could find that Shellpoint discriminated against the Simses based on their race. For their suit to survive summary judgment, the Simses needed to put forth enough evidence of discrimination to establish a dispute of material fact. *See Latimore v. Citibank Fed. Sav. Bank*, 151 F.3d 712, 715 (7th Cir. 1998). But their only evidence is Cox's statement, which is vague and requires too much speculation to conclude that their race motivated Shellpoint to require them to satisfy Tiffany's outstanding loan payments. *See Estate of Davis v. Wells Fargo Bank*, 633 F.3d 529, 540–41 (7th Cir. 2011). Rather, that requirement is consistent with the loan agreement, which conditions assumption on Shellpoint's determination that its security would not be impaired. Moreover, the Simses do not point to evidence countering the Shellpoint representative's statement that they never produced a complete application.

Because we conclude that the Simses failed to show discrimination, we need not assess whether they qualify as applicants under the Act. *See Moran Foods, Inc. v. Mid-Atl. Mkt. Dev. Co., LLC*, 476 F.3d 436, 441–42 (7th Cir. 2007).

                                                                AFFIRMED